729 So.2d 287 (1999)
James W. THOMPSON and Michelle Thompson
v.
SKIPPER REAL ESTATE COMPANY et al.
No. 1971767.
Supreme Court of Alabama.
January 15, 1999.
*288 J. Patrick Courtney III, Mobile, for appellants.
James G. Curenton, Jr., Fairhope, for appellees.
HOUSTON, Justice.
James W. Thompson and Michelle K. Thompson appeal from an order of the Baldwin County Circuit Court dismissing their action alleging fraud and breach of contract against Skipper Real Estate Company, George Skipper, Mickey Skipper, Danny Pullian, and Malcolm Hollingsworth, in connection with the Thompsons' purchase of a house in Baldwin County from George Skipper. The Thompsons filed their action in the Mobile County Circuit Court; however, that court transferred it to Baldwin County on the motion of the defendants. The Baldwin Circuit Court held that all of the Thompsons' claims were arbitrable, pursuant to an arbitration provision contained in their real estate sales contract. We affirm.[1]
*289 The facts pertinent to this appeal are undisputed. The real estate sales contract signed by the Thompsons provided in part:
"As part of this agreement the undersigned agree that any controversy or claim between them arising out of or relating to this agreement shall be settled exclusively by arbitration. Such arbitration shall be conducted in accordance with the Commercial Arbitration Rules then in force of the American Arbitration Association. The decision of the arbitrator shall be a final and binding resolution of the disagreement which may be entered as a judgment by any court of competent jurisdiction. Neither party shall sue the other where the basis of the suit is this agreement other than for enforcement of the arbitrator's decision...."
In order to perform under the contract, the Thompsons obtained a loan from Matrix Financial Services Corporation ("Matrix") in Phoenix, Arizona, and executed a mortgage securing that loan. Matrix later assigned the note and mortgage to BankAtlantic in Pompano Beach, Florida. In addition, the Thompsons purchased their title insurance from First American Title Insurance Company, a California corporation, and they purchased their homeowner's insurance from Nationwide Mutual Fire Insurance Company, which has its home office in Columbus, Ohio. The record also indicates that other documents associated with the sale of the house were executed by the Thompsons and circulated in interstate commerce.
The Thompsons filed their complaint on June 5, 1997. The defendants were served with the complaint on July 1, 1997. The defendants' attorney filed a notice of appearance on July 16, 1997. On July 29, 1997, the defendants filed a motion to transfer the action from Mobile County to Baldwin County. On that same date, the defendants served the plaintiffs with a set of interrogatories. On August 19, 1997, the Thompsons filed a brief in opposition to the defendants' motion to transfer the action, requesting that the Mobile Circuit Court delay its ruling until they had completed discovery with respect to the venue issue. On January 7, 1998, the Thompsons took the depositions of George Skipper and Susan Harmon. Harmon was the office manager and closing agent for Skipper Real Estate Company. In those depositions, Skipper and Harmon were asked questions pertaining to the venue issue, as well as questions pertaining to the merits of the fraud and breach-of-contract claims. Skipper and Harmon were also questioned about the arbitration provision in the sales contract. At one point during Skipper's deposition, the defendants' attorney, in response to a question posed by the Thompsons' attorney, stated:
"You're assuming that I'll be defending Mr. Pullian and other defendants on the merits of this case. We're simply at the threshold of transferring the case to Baldwin County. Right now, the defendants are unified. If we ever get to that issue, provided arbitration allows us to, you'll then probably discover that the defendants will have different attorneys on the merits...."
The Mobile Circuit Court entered an order on January 30, 1998, transferring the case to Baldwin County. Three months and eight days later, on May 8, 1998, the defendants moved the Baldwin Circuit Court to compel the Thompsons to arbitrate their claims. On May 14, 1998, the Baldwin Circuit Court dismissed the Thompsons' complaint and ordered that their claims be arbitrated. On May 20, 1998, the Thompsons filed a brief in opposition to the motion to compel, and on May 21, 1998, they filed a motion to alter, amend, or vacate the judgment of dismissal. The court denied that motion.
Two issues are presented on this appeal: 1) whether the real estate sales contract "involves" interstate commerce, so as to render applicable the provisions of the FAA; and, if so, 2) whether the defendants waived their right under the contract to compel arbitration of the Thompsons' claims.[2]

*290 Applicability of the FAA

It is well settled that the FAA preempts contrary state law (based on statute and public policy) and renders enforceable a predispute arbitration agreement contained in a contract that "involves" interstate commerce. See Jim Burke Automotive, Inc. v. Beavers, 674 So.2d 1260 (Ala.1995); Lopez v. Home Buyers Warranty Corp., 670 So.2d 35 (Ala. 1995). Recently, in Mutual Assurance, Inc. v. Wilson, 716 So.2d 1160, 1165-66 (Ala.1998), this Court, citing Hurst v. Tony Moore Imports, Inc., 699 So.2d 1249 (Ala.1997), noted that "United States Supreme Court precedent indicates that an intrastate transaction nonetheless `involves' interstate commerce if it has virtually any tangible effect on the generation of goods or services for interstate markets and their distribution to the consumer."
The record in this present case indicates that the Thompsons' real estate contract with George Skipper, although it was intrastate in nature, did have an effect on the provision of services in interstate commerce. As previously noted, the Thompsons obtained their financing from a corporation operating out of Arizona (which later assigned the note and mortgage to a corporation operating out of Florida); they obtained their title insurance from a California corporation; and they obtained their homeowner's insurance from a corporation operating out of Ohio. We conclude that the real estate sales contract between the Thompsons and Skipper had a sufficient nexus with interstate commerce to invoke the provisions of the FAA. See Lopez v. Home Buyers Warranty Corp., supra, in which this Court held that the FAA applied to a home buyer's warranty that had been transferred to the buyers in a Montgomery real estate transaction. This Court specifically noted in Lopez that not only had the warranty been issued by Home Buyers Warranty Corporation from its office in Denver, Colorado, but also the house had a Veterans' Administration loan guaranty and the title insurance had been procured through a California company.
Waiver
"In Companion Life Ins. Co. v. Whitesell Manufacturing, Inc., 670 So.2d 897, 899 (Ala.1995), this Court stated:
"`It is well settled under Alabama law that a party may waive its right to arbitrate a dispute if it substantially invokes the litigation process and thereby substantially prejudices the party opposing arbitration. Whether a party's participation in an action amounts to an enforceable waiver of its right to arbitrate depends on whether the participation bespeaks an intention to abandon the right in favor of the judicial process and, if so, whether the opposing party would be prejudiced by a subsequent order requiring it to submit to arbitration. No rigid rule exists for determining what constitutes a waiver of the right to arbitrate; the determination as to whether there has been a waiver must, instead, be based on the particular facts of each case. See Huntsville Golf Development, Inc. v. Aetna Casualty & Surety Co., 632 So.2d 459 (Ala.1994); Ex parte McKinney, 515 So.2d 693 n. 2 (Ala.1987); Ex parte Merrill Lynch, Pierce, Fenner & Smith, Inc., 494 So.2d 1 (Ala.1986); Ex parte Costa & Head (Atrium), Ltd., 486 So.2d 1272 (Ala.1986), overruled on other grounds, Ex parte Jones, 628 So.2d 316 (Ala.1993). In accord, see S & H Contractors, Inc. v. A.J. Taft Coal Co., 906 F.2d 1507 (11th Cir.1990), cert. denied, 498 U.S. 1026, 111 S.Ct. 677, 112 L.Ed.2d 669 (1991).'
"In Ex parte Merrill Lynch, Pierce, Fenner & Smith, Inc., 494 So.2d 1, 2-3 (Ala. 1986), this Court elaborated on the considerations a court must take into account in determining whether one has waived the right to arbitrate:
"`The general rule with regard to waiver of one's right to arbitrate was *291 stated in American Dairy Queen Corp. v. Tantillo, 536 F.Supp. 718 (M.D.La. 1982):
"`"It is well settled that there is a strong federal policy favoring arbitration and a waiver of the right to compel arbitration will not be lightly inferred. [Citations omitted.]"
"`536 F.Supp. at 720. The court went on to say:
"`"Therefore, the burden on one seeking to prove waiver is a heavy one. The question of what constitutes a waiver of the right of arbitration depends on the facts of each case. [Citations omitted.]"
"`Id. In Moses H. Cone Memorial Hospital v. Mercury Construction Corp., 460 U.S. 1, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983), the United States Supreme Court agreed that there is a strong federal policy favoring arbitration:
"`"The [Federal] Arbitration Act establishes that, as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability."
"`460 U.S. at 24-25, 103 S.Ct. at 941.
"`There is considerable support for the proposition that the determination of whether there has been a waiver must be made on a case-by-case basis and is to be based on the particular facts of each case. However, a two-pronged test has developed which courts use when considering whether a party has waived the right to arbitrate. First, the party opposing arbitration must prove that there has been a "substantial invocation of the litigation process." Tantillo, supra. This however, is only part of what a party is required to prove in order for the court to find that the other has waived the right to seek arbitration.
"`"Even if the Court assumes that there was invocation of the litigation process by the defendants, a finding of waiver cannot be made absent a showing of prejudice to the party opposing arbitration. [Citations omitted.]"
"`536 F.Supp. at 722.
"`Therefore, this Court must decide whether plaintiff met her burden and proved that the defendants substantially invoked the litigation process and that she suffered prejudice as a result. See Ex parte Costa & Head (Atrium), Ltd., 486 So.2d 1272 (Ala.1986). [Emphasis original.]
"`Whether a party has substantially invoked the litigation process is another question which must be answered based upon the facts of each case individually, but case law and treatises provide us with guidelines helpful in our determination of this issue. According to 6 C.J.S. Arbitration § 37 (1975):
"`"Whether participation in an action is a waiver of the right to arbitration depends on whether the participation bespeaks an intention to abandon the right.... It has been held that the service of an answer in an action on the contract does not constitute waiver of the right to arbitration, even though the answer does not set up the arbitration clauses as a defense.... The mere serving of an answer and the making of a motion to dismiss a complaint does not constitute a waiver."
"`This rule was also set out in Clar Productions, Ltd. v. Isram Motion Pictures, 529 F.Supp. 381 (S.D.N.Y.1982):
"`"`Merely answering on the merits, asserting a counterclaim (or cross-claim) or participating in discovery, without more, will not constitute a waiver.' Demsey & Assocs. v. Steamship Sea Star, 461 F.2d 1009, 1018 (2d Cir.1972). And in Chatham Shipping Co. v. Fertex S. S. Corp., 352 F.2d 291, 293 (2d Cir.1965), it was stated that the earliest point at which waiver of the right to arbitration may be found `is when the other party files an answer on the merits.'"
"`529 F.Supp. at 383.

*292 "`We are of the opinion that the above authority, especially when considered in light of our recent decision in Ex parte Costa & Head (Atrium), Ltd., supra, demonstrates that the defendants did not substantially invoke the litigation process in the case before us. The defendants simply filed a motion to compel arbitration and stay proceedings pending arbitration; indeed, the defendants did not even file an answer to plaintiff's complaint. In the Clar Productions case the court not only stated that the filing of an answer was the earliest point at which [a waiver] of one's right to arbitrate could be found, but went further to say that a party could file an answer, assert a counterclaim or cross-claim, and participate in discovery without waiving the right to compel arbitration. It is clear to this Court, then, that the defendants did not participate in the action to a degree that evinced an intent to abandon the right to seek arbitration.'
"Our cases continue to make it clear that, because of the strong federal policy favoring arbitration, a waiver of the right to compel arbitration will not be lightly inferred, and, therefore, that one seeking to prove waiver has a heavy burden. Ex parte Dyess, 709 So.2d 447 (Ala.1997); Ex parte Phelps, 672 So.2d 790 (Ala.1995)."
Mutual Assurance, Inc. v. Wilson, supra, at 1162-64.
The basic question for this Court is whether, based on the facts before it, the Baldwin Circuit Court abused its discretion in holding that the defendants had not waived their right to compel arbitration. See Ex parte McKinney, 515 So.2d 693 (Ala. 1987); Companion Life Ins. Co. v. Whitesell Mfg., Inc., 670 So.2d 897, 899 (Ala.1995). We conclude that it did not. The record does indicate that a little over 11 months elapsed between the date the Thompsons filed their complaint and the date the defendants filed their motion to compel arbitration. However, it is significant, we think, that the parties spent almost eight of those months litigating the venue issue. In fact, the record indicates that the Thompsons specifically requested the Mobile Circuit Court to delay its ruling on the venue issue until discovery could be completed with regard to that issue. The depositions of Skipper and Harmon reveal that the defendants were contemplating arbitration in January 1998 and that the Thompsons were aware of that possibility. The defendants, who never answered the complaint, filed their motion to compel in the Baldwin Circuit Court just over three months after the Mobile Circuit Court had ruled on the venue issue. Our survey of the caselaw does not indicate that the mere filing of a motion to transfer an action to the proper venue; the filing of one set of interrogatories with such a motion; and the participation in two depositions, partly for the purpose of resolving the venue issue, constitutes a waiver of a right to compel arbitration. The cases do suggest, however, that this Court has made every effort to uphold the trial courts' rulings on the waiver issue. See, e.g., Huntsville Golf Development, Inc. v. Aetna Casualty & Surety Co., supra; Ex parte McKinney, supra, at n. 2; Ex parte Merrill Lynch, Pierce, Fenner & Smith, Inc., 494 So.2d 1 (Ala.1986); Ex parte Smith, 706 So.2d 704 (Ala.1997) (Houston, J., dissenting).
We note that this present case is distinguishable from Companion Life, supra, which the Thompsons rely on heavily. In Companion Life, this Court concluded that a waiver had occurred as a result of Companion's removing the case to a Federal court and its attempt to invoke the doctrine of Federal preemption with respect to the plaintiffs state-law claims, under the Employee Retirement Income Security Act of 1974, as amended, 29 U.S.C. § 1001 et seq. ("ERISA"). See also Ex parte Hood, 712 So.2d 341 (Ala.1998). Merely moving to transfer an action to the proper venue and propounding one set of interrogatories with that motion is not such substantial involvement in the litigation process as to constitute a waiver of the right to compel arbitration, unlike the removal of a state action to a Federal court and an attempt to litigate that action in that Federal forum. A defendant has the right to have the proper venue established before it has any obligation to move to compel arbitration. See Ala.Code 1975, § 6-3-21; Rule 82(d), Ala.R.Civ.P.; see, also, Ex *293 parte Chrysler Corp., 659 So.2d 113 (Ala. 1995). Here, the defendants had a reasonable basis for not seeking to arbitrate before the Mobile Circuit Court had ruled on their venue motion. See Companion Life, supra.
We also note, with respect to the question of prejudice to the Thompsons, that the Thompsons' attorney made the following statement in his affidavit attached to the Thompsons' brief in opposition to the defendants' motion to compel:
"After Defendants filed their Notice of Appearance and Motion to Transfer Venue on [July 29, 1997], and prior to the filing of Defendants' Motion to Compel Arbitration on [May 8, 1998], I estimate that my office expended in excess of 20 hours in prosecution of the subject case including numerous phone conferences with Defendants' counsel's office regarding discovery, document production, and depositions; preparation and revision of Answers to Interrogatories; scheduling and taking of the deposition of the Defendant George Skipper; court appearances regarding Defendants' Objection to the Taking of Depositions pending a ruling on Defendants' Motion to Transfer Venue, and concerning Defendants' Motion to Transfer Venue; legal research concerning Defendants' Motion to Transfer Venue; phone conferences with Defendants' insurance defense counsel ... regarding his appearance in the case and the need to complete discovery; review of voluminous documents produced by Defendants; and other matters."
(Emphasis added.) Based on this affidavit, which clearly indicates that the Thompsons' attorney spent a great deal of his 20 hours or more on this case litigating the venue issue, and based on the fact that almost 8 months of the defendants' 11-month delay in moving to compel arbitration can be attributed to the Thompsons' opposition to the defendants' motion to transfer the action to Baldwin County, we cannot conclude that the Thompsons will suffer substantial prejudice by having to arbitrate their claims.
For the foregoing reasons, the order dismissing the complaint is affirmed.
AFFIRMED.
HOOPER, C.J., and MADDOX and LYONS, JJ., concur.
SEE, J., concurs in the result.
SHORES, KENNEDY, and COOK, JJ., dissent.
COOK, Justice (dissenting).
The main opinion concludes that the defendants, who aggressively litigated the issue of venue in this action for 11 months before moving to compel arbitration, did not waive their right to compel arbitration, stating: "A defendant has the right to have the proper venue established before it has any obligation to move to compel arbitration." 729 So.2d at 292 (emphasis added). I respectfully dissent. What interest does a party have in establishing venue in a case he does not intend to litigate in the first place? Otherwise stated, it serves no purpose for a party who does not intend to waive the right to compel arbitration, to litigate the venue issue to a conclusion, as the defendant did in this case, before moving to compel arbitration. Indeed, it is like putting the "cart (venue) before the horse (arbitration)." The venue of litigation is irrelevant in a case in which arbitration is contemplated.
In my opinion, a party who litigates the issue of venue for 11 months through aggressive legal maneuvers, including taking depositions, naturally "bespeaks an intention to abandon the right [to compel arbitration] in favor of the judicial process." Companion Life Ins. Co. v. Whitesell Mfg., Inc., 670 So.2d 897, 899 (Ala.1995). In such a case, the party opposing the motion to compel arbitration will, of course, be prejudiced by the other party's procrastination. See id. (the second prong of the waiver inquiry is "whether the opposing party would be prejudiced by a subsequent order requiring it to submit to arbitration").
In this case, for example, the plaintiffs "incurred considerable attorney[] fees and expenses in the eleven months that Defendants participated in the litigation process." Brief of Appellants, at 17-18. "Moreover, Plaintiffs' counsel scheduled depositions and finally took the depositions of [the defendant] *294 George Skipper and Susan L. Harmon. In addition to preparing responses to discovery, Plaintiff's counsel ... also expended many hours doing legal research, participating in phone conferences and making court appearances." Id. Thus, the plaintiffs correctly assert that they were prejudiced by the accrual of these expenses, which "would have been unnecessary if Defendants had asserted arbitration in a prompt manner." Id. On these facts, I would hold that the defendants so "substantially invoke[d] the litigation process," Companion Life Ins. Co., 670 So.2d at 899, that they waived their right to compel arbitration.
But my disagreement with the approach to this case taken in the main opinion is not limited to the waiver issue. Even more fundamental to this case than the waiver issue is the fact thatunder general contract and real estate principlesthe contract containing the arbitration clause was apparently extinguished before this litigation began. More specifically, the contract containing the arbitration clause was a contract for the purchase of real estate, and, under the wellknown doctrine of merger, "a contract for the purchase of real estate is merged into the deed conveying the property." Thornton v. Guckiean & Co., 77 Ohio App.3d 794, 799, 603 N.E.2d 1066, 1069 (1991). "Where a deed is delivered and accepted without qualification pursuant to a contract for the sale of real estate, no cause of action upon the contract exists because of the merger." Id. In other words, "when a deed is executed, the contract for sale merges into the deed and ceases to exist." Timothy Christian Schools v. Village of Western Springs, 285 Ill.App.3d 949, 953, 221 Ill.Dec. 261, 675 N.E.2d 168, 171 (1996).
The purchase contract was executed on September 22, 1995, and the complaint commencing this action was filed on June 5, 1997. Although the facts regarding the merger issue have not been fully developed, the record suggests that the plaintiffs commenced this litigation only after they had received a deed and had entered upon the premises. If so, the defendants are seeking to enforce a provision of a contract that does not exist.
Because arbitration can be compelled only pursuant to a valid, enforceable contract, Ex parte Bentford, 719 So.2d 778, 780 (Ala.1998); Carl Gregory Chrysler-Plymouth, Inc. v. Barnes, 700 So.2d 1358 (Ala.1997), involving interstate commerce, Allied-Bruce Terminix Cos. v. Dobson, 513 U.S. 265, 115 S.Ct. 834, 130 L.Ed.2d 753 (1995), I would remand this cause for the trial court to make findings on the merger issue. For these reasons, I respectfully dissent.
NOTES
[1] A direct appeal is the generally accepted method for obtaining review of a trial court's order denying a motion to compel arbitration. This right to appeal from an interlocutory order denying a motion to compel arbitration was recognized by this Court after Congress amended the Federal Arbitration Act, 9 U.S.C., § 1 et seq. ("FAA"), to provide that right. A petition for a writ of mandamus is the generally accepted method for obtaining review of an order granting a motion to compel arbitration. A.G. Edwards & Sons, Inc. v. Clark, 558 So.2d 358, 360 (Ala. 1990). Ex parte Alexander, 558 So.2d 364, 365 (Ala.1990). See Ex parte McNaughton, 728 So.2d 592, at n. 1 (Ala.1998). The Thompsons' appeal was proper because the Baldwin Circuit Court dismissed their complaint instead of staying their action pending arbitration. The dismissal was a final, appealable judgment. See Ala.Code 1975, § 12-22-2. See also Hurst v. Tony Moore Imports, Inc., 699 So.2d 1249 (Ala. 1997), wherein four Justices stated that a trial court can dismiss an action if all of the plaintiff's claims are arbitrable.
[2] Justice Cook states in his dissent that this Court should reverse the trial court's order and remand this case for a determination of whether the contract containing the arbitration provision merged into the deed. That issue, however, was not raised in the trial court or before this Court. Although this Court will affirm an order of the trial court on a ground not asserted below, Smith v. Equifax Services, Inc., 537 So.2d 463 (Ala. 1988), this Court will not reverse a trial court's judgment on a ground that has never been raised. Smith; see, also, Boshell v. Keith, 418 So.2d 89, 92 (Ala.1982) ("When an appellant fails to argue an issue in its brief, that issue is waived.").