MADDOX, Justice.
This mandamus petition relates to an action filed in the Baldwin Circuit Court. That action involves a dispute between a buyer of a mobile home and the seller of the mobile home; one of the seller’s employees; and the financial institution that provided financing for the purchase. The circuit court ordered the parties to proceed in arbitration and removed the case from its trial docket. Larry Smith, the buyer, petitions this Court for a writ of mandamus directing the circuit judge to set aside her order refusing to reinstate the civil action to her trial docket. Smith further asks this Court to declare that the arbitration clause involved in this case is unenforceable, and he also argues that the other parties had waived any rights they may have had to compel arbitration. For the reasons discussed below, the writ is due to be denied.

Facts and Procedural History

Larry Smith purchased a double-wide mobile home from The Sanderson Group, Inc., d/b/a Sanderson Homes of Bay Mi-nette, on December 6, 1996, at approximately 4:30 p.m. Greentree Financial Corporation financed the purchase. The purchase contract establishes that Green-tree is the assignee of the contract obligations, and the contract contains the following arbitration clause:[1]
“14. ARBITRATION: ALL DISPUTES, CLAIMS OR CONTROVERSIES ARISING FROM OR RELATING TO THIS CONTRACT OR THE PARTIES THERETO SHALL BE RESOLVED BY BINDING ARBITRATION BY ONE ARBITRATOR SELECTED BY YOU WITH MY CONSENT. THIS AGREEMENT IS MADE PURSUANT TO A TRANSACTION IN INTERSTATE COMMERCE AND SHALL BE GOVERNED BY THE FEDERAL ARBITRATION ACT AT 9 U.S.C. SECTION 1. JUDGEMENT UPON THE AWARD RENDERED MAY BE ENTERED IN ANY COURT HAVING JURISDICTION. THE PARTIES AGREE AND UNDERSTAND THAT THEY CHOOSE ARBITRATION INSTEAD OF LITIGATION TO RESOLVE DISPUTES. THE PARTIES UNDERSTAND THAT THEY HAVE A RIGHT TO LITIGATE DISPUTES IN COURT, BUT THAT THEY PREFER TO RESOLVE THEIR DISPUTES THROUGH ARBITRATION, EXCEPT AS PROVIDED HEREIN. THE PARTIES VOLUNTARILY AND KNOWINGLY WAIVE ANY RIGHT THEY HAVE TO A JURY TRIAL EITHER PURSUANT TO ARBITRATION UNDER THIS CLAUSE OR PURSUANT TO A COURT ACTION BY YOU (AS PROVIDED HEREIN). THE PARTIES AGREE AND UNDERSTAND THAT ALL DISPUTES ARISING UNDER CASE LAW, STATUTORY LAW AND ALL OTHER LAWS INCLUDING, BUT NOT LIMITED TO, ALL CONTRACT, TORT AND PROPERTY DISPUTES WILL BE SUBJECT TO BINDING ARBITRATION IN ACCORD WITH THIS CONTRACT. THE PARTIES AGREE THAT THE ARBITRATOR SHALL HAVE ALL POWERS PROVIDED BY LAW, THE CONTRACT AND THE AGREEMENT OF THE PARTIES. THESE POWERS SHALL INCLUDE ALL LEGAL AND EQUITABLE REMEDIES INCLUDING, BUT NOT LIMITED TO, MONEY DAMAGES, DECLARATORY RELIEF AND INJUNC-TIVE RELIEF. NOTWITHSTANDING ANYTHING HEREUNTO [sic] THE CONTRARY, YOU RETAIN *607 AN OPTION TO USE JUDICIAL (FILING A LAWSUIT) OR NONJUDICIAL RELIEF TO ENFORCE A SECURITY AGREEMENT RELATING TO THE MANUFACTURED HOME SECURED IN A TRANSACTION UNDERLYING THIS ARBITRATION AGREEMENT, TO ENFORCE THE MONETARY OBLIGATION SECURED BY THE MANUFACTURED HOME OR TO FORECLOSE ON THE MANUFACTURED HOME. THE INSTITUTION AND MAINTENANCE OF A LAWSUIT TO FORECLOSE UPON ANY COLLATERAL, TO OBTAIN A MONETARY JUDGMENT OR TO ENFORCE THE SECURITY AGREEMENT SHALL NOT CONSTITUTE A WAIVER OF THE RIGHT OF ANY PARTY TO COMPEL ARBITRATION REGARDING ANY OTHER DISPUTE OR REMEDY SUBJECT TO ARBITRATION IN THIS CONTRACT, INCLUDING THE FILING OF A COUNTERCLAIM IN A SUIT BROUGHT BY YOU PURSUANT TO THIS PROVISION.”
The contract also contains a paragraph regarding the waiver of Smith’s right to a jury trial. That paragraph states:
“15. WAIVER OF JURY TRIAL: I HEREBY WAIVE ANY RIGHT TO A TRIAL BY JURY THAT I HAVE IN ANY SUBSEQUENT LITIGATION BETWEEN ME AND THE SELLER, OR ME AND ANY ASSIGNEE OF THE SELLER, WHERE SUCH LITIGATION ARISES OUT OF, IS RELATED TO, OR IS IN CONNECTION WITH ANY PROVISION OF THIS CONTRACT WHETHER THE CONTRACT IS ASSERTED AS THE BASIS FOR A CLAIM, COUNTERCLAIM OR CROSSCLAIM, OR A DEFENSE TO A CLAIM, COUNTERCLAIM OR CROSSCLAIM.”
Because Larry Smith wanted to obtain insurance on the home before the insurance office closed at 5:00 p.m., he hurriedly signed the contract, without reading it closely.
On December 20, 1996, Sanderson delivered one-half 0&) of the mobile home to Smith. From what is currently before this Court, it is unclear exactly when Sander-son delivered the other half of the mobile home, but it appears to have been delivered sometime between early January and March 1997. Smith alleges that he was dissatisfied with the delayed delivery of the second half of his mobile home, and that, as a result, he contacted Greentree. Smith alleges that agents of Greentree told him to send a letter rescinding the contract. On January 6, 1997, Smith sent a letter stating, in effect, that he no longer wanted the mobile home. He stated as his reasons that the first-delivered half of the mobile home had been exposed to snow and rain as a result of Sanderson’s failure to deliver the second half and that Sander-son had repeatedly failed to keep its promises to deliver the second half.
In June 1997, Greentree sued Smith, seeking damages for Smith’s alleged breach of the purchase contract. In August, Smith answered, asserting affirmative defenses and a counterclaim and demanding a jury trial. In September, Smith filed a third-party complaint naming Sanderson and Morris Nelson, a Sander-son employee, as third-party defendants. In October, Greentree moved to compel arbitration; the trial court granted its motion. In January 1998, Nelson moved to compel arbitration, and the trial court granted his motion. Finally, in February, Sanderson moved to compel arbitration, and the trial court also granted its motion. On the same day the court granted Sand-erson’s motion to compel arbitration, Smith’s attorney withdrew as counsel.
The trial court’s orders compelling arbitration did not specify a period within which the arbitration proceedings were required to commence. In February 1998, according to Greentree, an attorney telephoned Greentree’s lawyer and stated that *608 he was reviewing the case for Smith. This attorney stated that he should not be considered as representing Smith until he had filed an appearance in the case. Green-tree, on June 4, 1998, received notice that Smith had acquired substitute counsel; it received this notice when Smith’s present attorney filed a motion asking the trial court to reinstate the case on the trial docket. On August 6, 1998, the trial court denied the motion and ordered that arbitration commence within 45 days. Smith filed this petition for the writ of mandamus on September 14, 1998. The pertinent events are set out in the following chronology--
June 23,1997 Greentree filed its complaint.
August 29,1997 Smith filed his answer and counterclaim.
September 5,1997 Smith filed his third-party complaint.
October 9,1997 Greentree moved for arbitration.
October 10,1997 The trial court granted Greentree’s motion.
January 20,1998 Nelson moved for arbitration.
January 23, 1998 The trial court granted Nelson’s motion.
February 5,1998 Sanderson moved for arbitration.
March 16,1998 The trial court granted Sanderson’s motion.
March 16,1998 Smith’s attorney withdrew.
June 4,1998 Smith moved the court to reinstate the case to the trial docket and to declare the arbitration clause unenforceable or to declare that Greentree, Sanderson, and Nelson had waived their right to demand arbitration.
August 6,1998 The trial court denied Smith’s June 4 motion.
September 14, 1998 Smith petitioned this Court for mandamus relief.
In support of his mandamus petition, Smith makes four basic arguments: (1) that the trial court erred by not granting his motion to reinstate the civil action to the trial docket because, he argues, the arbitration clause is unconscionable and should not be enforced; (2) that the trial court erred by refusing to hold that a question whether Smith had rescinded the contract must be resolved by a jury trial and by further refusing to consider his rescission letter or to allow him to submit it into the record; (3) that the trial court erred by refusing to declare that Green-tree, Sanderson, and Nelson had waived their right to demand arbitration because of their delay in pursuing arbitration; and (4) that the trial court erred by holding that he had waived his right to a jury trial.
Greentree, Sanderson, and Nelson argue, first, that Smith’s petition is untimely because it was not filed within 42 days after the trial court issued its orders compelling arbitration. They next argue that the arbitration clause is valid and enforceable and that they have not waived their rights to demand arbitration.
I.
We first address Greentree, Sanderson, and Nelson’s argument that Smith’s mandamus petition is untimely. This Court has held that when a trial court issues an order granting a motion to compel arbitration, the proper means to challenge such an order is by petitioning for a writ of mandamus. Ex parte Napier, 728 So.2d 49 (Ala.1998).[2] Greentree, Sander-son, and Nelson argue that the 42-day limit set out in Rule 4, Ala. R.App. P., should be applied to mandamus petitions seeking to overturn a trial court’s order compelling arbitration.
Although this petition does not fall neatly within the category of cases challenging a trial court’s order granting a motion to compel arbitration, the ultimate issue presented by the petition is whether the respondents — Greentree, Sanderson, and Nelson — can compel arbitration. *609 Smith does not ask this Court to order the trial court to vacate its three orders compelling arbitration, but instead asks this Court to direct the trial court to vacate its order denying the motion to reinstate the underlying case to the trial docket. Despite this distinction, the gravamen of this petition is a challenge to the continued requirement that Smith submit to arbitration, and we believe that the legal standards applicable in our review of a petition challenging an order granting a motion to compel arbitration apply here.
This Court has never established a strict time frame in which a party must file a petition seeking mandamus relief. The only limit previously imposed by this Court has been that a mandamus petition should be filed in a “reasonable time.” See Ex parte Johnson, 485 So.2d 1098, 1104 (Ala.1986); and Evans v. Insurance Co. of North America, 349 So.2d 1099 (Ala.1977). The Court of Criminal Appeals and the Court of Civil Appeals have similarly held that such a petition must be filed within a reasonable time. See, e.g., State v. McKinney, 727 So.2d 893 (Ala.Crim.App.1998); and Ex parte Dennis, 681 So.2d 157, 160 (Ala.Civ.App.1995).
This Court is presently considering whether to amend Rule 21, Ala. R.App. P., to establish 42 days (measured from the date of the adverse order the petitioner is challenging) as the presumptive outer limit of the reasonable period for filing a mandamus petition. Because we have not yet adopted such an amendment, however, and because the reasonable-time rule was in force when Smith filed his petition, we apply that established rule to this case.
Applying the “reasonable time” rule, we now consider whether this mandamus petition was filed within a “reasonable time.” In Johnson, the respondents argued that a lapse of seven months between the entry of a trial court’s order and the filing of the mandamus petition was unreasonable. Rejecting that argument, this Court noted that the “respondents [had] failed to show any prejudice resulting from the delay [or] the existence of any other circumstances which would show unreasonableness.” 485 So.2d at 1105. Instead, this Court held that “[t]he mere passage of time, without more, will not suffice.” Id.; see also Ex parte Sasser, 730 So.2d 604 (Ala.1999) (opinion on application for rehearing).
The trial court granted Greentree’s motion to compel arbitration on October 10, 1997. It granted Nelson’s motion to compel arbitration on January 23, 1998, and it granted Sanderson’s motion to compel arbitration on March 16, 1998. Smith filed his motion to reinstate on June 4, 1998, and the trial court denied it on August 6, 1998. He filed his petition for the writ of mandamus on September 14, 1998. He filed the petition approximately 5 weeks after the trial court had denied his motion to reinstate the case. It was filed approximately 11 months after the trial court had granted Greentree’s motion to compel arbitration and approximately 6 months after the trial court had granted Sanderson’s motion to compel arbitration. As we have stated, however, “[t]he mere passage of time, without more, will not suffice” for us to determine that the mandamus petition was not filed within a reasonable time. Johnson, 485 So.2d at 1105. In this case, Greentree, Sanderson, and Nelson make no argument as to how the delay prejudiced them, nor do they set forth any other facts that would indicate Smith’s petition was not timely filed. Accordingly, given all the facts in this case, we hold that the petition was filed within a “reasonable time.”
II.
Having decided that the petition was timely filed, we next consider Smith’s contention that Greentree, Sanderson, and Nelson waived their right to compel arbitration. Whether a party has waived his right to compel arbitration must be determined “ ‘on the particular facts of each case.’ ” Thompson v. Skipper Real Estate Co., 729 So.2d 287 (Ala.1999), quoting Companion Life Insurance Co. v. White- *610 sell Manufacturing, Inc., 670 So.2d 897, 899 (Ala.1995). It is well settled that a party waives the right to compel arbitration “ ‘if it substantially invokes the litigation process and thereby substantially prejudices the party opposing arbitration.’ ” Id., 729 So.2d at 290. In determining whether a party has substantially invoked the litigation process, a court must determine whether a party’s participation in an action “ ‘bespeaks an intention to abandon the right [to arbitrate] in favor of the judicial process.’” Id., 729 So.2d at 290.
Because of the strong federal policy favoring arbitration, courts will not lightly infer a waiver of arbitration rights. The United States Supreme Court has said:
“The [Federal] Arbitration Act establishes that, as a matter of federal law, any doubts concerning the scope of arbi-trable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability.”
Moses H. Cone Memorial Hospital v. Mercury Construction Corp., 460 U.S. 1, 24-25, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983). Accordingly, “the burden on one seeking to prove waiver is a heavy one.” American Dairy Queen Corp. v. Tantillo, 536 F.Supp. 718 (M.D.La.1982).
A writ of mandamus will not be issued unless it is shown “that the trial court abused its discretion.” Ex parte Alexander, 558 So.2d 364, 366 (Ala.1990). Specifically, a writ of mandamus, “a drastic and extraordinary writ,” is issued only upon a showing of: “(1) a clear legal right in the petitioner to the order sought; (2) an imperative duty on the respondent to perform, accompanied by a refusal to do so; (3) the lack of another adequate remedy; and (4) the properly invoked jurisdiction of the court.” Ex parte Alfab, Inc., 586 So.2d 889, 891 (Ala.1991).
Applying these rules, the trial court was required to ask: Did Greentree, Sander-son, and Nelson substantially invoke the litigation process? That is, did their actions “[bespeak] an intention to abandon the right [to arbitrate] in favor of the judicial process”? Thompson, 729 So.2d at 290. We, in turn, must ask whether, under the facts of this case, the trial court abused its discretion in determining that they had not waived, or abandoned, that right and in refusing to reinstate the case to the trial docket.
Nelson filed his motion to compel arbitration on the same day that he was served with Smith’s third-party complaint. Sand-erson moved to compel arbitration within approximately four and a half months of being served with Smith’s third-party complaint. Greentree moved to compel arbitration within approximately three and half months of filing its complaint and within approximately one and a half months of being served with Smith’s answer and counterclaim. Significantly, however, it does not appear from the materials before this Court that Greentree, Sanderson, or Nelson conducted any discovery or engaged in any litigation activity after the trial granted their motions to compel.
Addressing the waiver issue, Smith argues that under the terms of the contract Sanderson, Nelson, and Greentree were responsible for selecting the arbitrator and that he had no power to compel them to make that selection. He argues that by failing to take action to select an arbitrator and begin the arbitration proceedings, Sanderson, Nelson, and Greentree could be found to have “substantially [invoked] the litigation process” and “[abandoned their] right [to compel arbitration,] in favor of the judicial process.” Thompson, supra. The question, then, is whether the inaction of Sanderson, Nelson, and Green-tree can be deemed to be an invocation of the litigation process. Smith fails, however, to cite any ease in which a party’s inaction in a similar situation has been *611 deemed to be a substantial invocation of the litigation process.
Nelson and Sanderson argue that once their motions for arbitration were granted they had no further responsibility to initiate the arbitration proceedings, citing Ex parte Dan Tucker Auto Sales, Inc., 718 So.2d 33 (Ala.1998), as authority for their argument. That case involved facts that were somewhat different from the facts in this case. In Dan Tucker Auto Sales, this Court found that the contract between the parties provided that the arbitration would be conducted under the Commercial Arbitration Rules of the American Arbitration Association, and this Court held that the terms “initiating party” and “claimant,” as used in those rules, did not apply to the party defending itself against the plaintiffs claims. In that case, it was the defendant that sought arbitration. This Court held:
“Had [the plaintiff] initially honored the terms of his agreement to arbitrate instead of filing a civil action, he would have been required to file with the AAA a written demand for arbitration, accompanied with the appropriate filing fee. He obviously would have been considered the initiating party.”
718 So.2d at 36. The AAA’s Commercial Arbitration Rules provide that the “initiating party” must take certain actions that commence the arbitration process.
The contract between the parties in this case did not specify that the arbitration would be conducted under the AAA’s Commercial Arbitration Rules. Thus, to determine the rights and obligations of the parties to the contract, we are guided by only the terms of the contract itself. The contract provides, as pointed out by Smith, that the arbitrator is to be selected by “you with my consent.” Applying the definitions of the terms “you” and “my” found at the bottom of the first page of the contract, we conclude that the arbitrator is to be selected by “[the Seller and also the Assignee or their affiliates] with [the Buyer’s] consent.” Under the contractual framework established by the parties in this case, then, it seems clear that after the trial court granted the motions to compel arbitration, it was the responsibility of Greentree, Sanderson, and Nelson to select a proposed arbitrator and to seek Smith’s consent. Did their failure to take those steps before June 4, 1998, when Smith filed his motion to reinstate, amount to a substantial invocation of the litigation process and an abandonment of their right to compel arbitration? In other words, was it an abuse of discretion for the trial court to deny that motion to reinstate the case? We think not.
In support of our conclusion, we note that the trial court’s orders compelling arbitration, as pointed out above, did not specify when the arbitration proceedings were to commence. Greentree argues that it did not seek to begin arbitration proceedings immediately, so that Smith could retain substitute counsel; his first counsel had withdrawn from the case. Greentree argues:
“Greentree acted in good faith in refraining from institution of arbitration until Smith had settled on substitute counsel. After the trial court ordered the litigation stayed pending arbitration, counsel for Smith withdrew. The trial court had not set a time limit for the institution of the arbitration. On February 2, 1998, attorney Bill Scully of Baldwin County contacted Greentree to say he was looking at the case for Smith, but he indicated he did not want to be considered in the case unless and until he filed an appearance. No appearance was forthcoming.
“Greentree does not know when Smith first consulted with his current counsel. The record would indicate it was on or before May 28, 1998 — the date of his affidavit (appended to his petition). Had Smith’s counsel notified [the] attorney for Greentree of his interest in the case Greentree would not have acted until he filed an appearance. For Greentree to have acted against Smith in pursuing arbitration while he was not *612 represented but [was] seeking counsel would surely have been viewed as unfair. Smith either on his own behalf or through counsel never let it be known that he desired a speedier commencement of arbitration. To the contrary, by Mr. Scully’s call he let it be known that he wanted to obtain counsel.”
Based on the record before us, we conclude that the trial judge did not abuse her discretion in refusing to reinstate the case to the trial docket. In fact, it appears that the delay, if anything, allowed Smith eventually to retain counsel to challenge the trial court’s orders.
What law must this Court apply when it considers claims such as Smith makes here? The United States Supreme Court has directed that all doubts concerning arbitration, including the issue whether a party has waived the right to arbitration, must be resolved in favor of arbitration, because of the strong federal policy in favor of arbitration. After reviewing the terms of the contract and considering the facts, and applying the law relating to the issue of waiver, as established by the Supreme Court of the United States, we cannot conclude that the trial court abused its discretion in holding that Smith had not met his heavy burden of proving a waiver.
III.
In his petition and briefs, Smith has also attacked the validity of the underlying contract itself, especially the arbitration clause and the jury-waiver clause. Smith argues that the contract was a contract of adhesion, that it lacked mutuality of remedy, and that it was unconscionable. In doing so, Smith relies on the lead opinion in Northcom, Ltd. v. James, 694 So.2d 1329, 1338 (Ala.1997), which stated:
“[I]n a case involving a contract of adhesion, if it is not shown that the party in an inferior bargaining position had a meaningful choice of agreeing to arbitration or not, and if the superior party has reserved to itself the choice of arbitration or litigation, a court may deny the superior party’s motion to compel arbitration based on the doctrines of mutuality of remedy and unconscionability.”
However, in Ex parte McNaughton, 728 So.2d 592 (Ala.1998), this Court described that language from the Northcom opinion as dictum and rejected it. In McNaughton, this Court held it improper to merge the doctrines of “unconscionability and mutuality of remedy to strike down arbitration clauses.” 728 So.2d at 595. Instead, this Court recognized that “ ‘there is nothing inherently unfair or oppressive about arbitration clauses.’” Id., quoting Coleman v. Prudential Bache Securities, Inc., 802 F.2d 1350, 1352 (11th Cir.1986). See Ex parte Napier, supra, where this Court also dealt with an action challenging an arbitration clause very similar to the one here. In Napier, the appellants also argued that the contract lacked mutuality of remedy and was unconscionable. This Court rejected the appellants’ mutuality-of-remedy argument, which was based on the lead opinion in Northcom. Addressing that argument, this Court noted that the burden of proof remained on the appellants to prove that the contract was unconscionable. 723 So.2d at 53. In attempting to meet this burden in Napier, the appellants merely showed that they had limited educations and that they both had difficulty reading. Id. This Court held that, without more, that evidence would not support a finding of unconscionability. Id.
Upon our review of the facts in this present case, we conclude that Smith failed to meet his burden of proof. The mere fact that he was in a hurry to sign the contract, and therefore did not take time to read it, would not support a finding that the contract was unconscionable. As for the provisions that Smith challenges, we have upheld such provisions before, as evidenced by our decisions in Ex parte Napier, supra, and Ex parte McNaughton, supra.
The petitioner has not clearly shown that the trial court abused its discretion in *613 compelling arbitration; therefore, the writ of mandamus is due to be denied.[3]
WRIT DENIED.
HOOPER, C.J., and HOUSTON, SEE, LYONS, and BROWN, JJ., concur.
COOK, J., concurs in the result.
KENNEDY and JOHNSTONE, JJ., dissent.

. The contract also provides the following definitions:
"1. DEFINITIONS: T, ‘me’, ‘my’ means the Buyer(s). 'You', ‘your’ means the Seller and also the Assignee or their affiliates. ..."

. In contrast, in cases where a trial judge has denied a motion to compel arbitration, the proper method for seeking review is to appeal that order within 42 days. A.G. Edwards & Sons, Inc. v. Clark, 558 So.2d 358 (Ala.1990).

. Because of this holding, we need not address whether the trial court erred in not considering, and not admitting into the record, Smith’s letter purporting to rescind the contract,