OPINION
{¶ 1} Defendant-appellant, Robert R. Yoder ("Robert"), appeals the judgment of the Common Pleas Court of Wyandot County.
 {¶ 2} The procedural history and facts of the case, which are long and intricate, are as follows. Robert and plaintiff-appellee, Debra L. Yoder, formerly, Debra L. Shearer (hereinafter, "Debra"), were married on February 14, 1976. The marriage was terminated by decree of dissolution in the Wyandot County Common Pleas Court on June 21, 1989. As part of the decree of dissolution, Debra received a full, undivided interest in the former marital residence and real property located in Mt. Blanchard, Wyandot County, Ohio.[1] On May 1, 1989, in accordance with the decree of dissolution, Robert executed a quit-claim deed and conveyed all of his rights, title andinterest in said residence and real property to Debra. Despite obtaining a dissolution of marriage, Robert and Debra continued to reside together for more than ten years until June 2000.
 {¶ 3} The living arrangement between Robert and Debra can be understood in the context of the parties' apparent motivation for originally entering into the separation agreement and divorce in 1989. Prior to seeking a divorce from Debra, Robert became aware that the federal government was in the process of obtaining liens against Robert's property in order to satisfy Robert's past-due federal tax obligations. To avoid losing any interest in the real property he owned to the federal government and to prevent his income from being garnished, Robert chose to obtain a divorce. As part of the divorce proceedings, Robert transferred his interest in the real estate to Debra so that title would appear in Debra's name alone. In addition, Robert was able to shield his income from collection by the federal government by ostensibly paying child and spousal support to Debra. Curiously, Debra maintains that she did not know of Robert's motives for seeking the divorce. Nevertheless, the result of the divorce, as pertinent to this appeal, is that Robert was divested of any interest in the residence and realty at issue, and Debra received full title to said realty.
 {¶ 4} While Debra and Robert continued to reside together, Robert performed maintenance and repair on the premises, helped install a pond and an open frame storage building, and partially remodeled the basement of the residence.
 {¶ 5} The parties living arrangement soured, and in June of 2000 Debra asked Robert on several occasions to move out and leave the premises. Robert refused. In response to Robert's refusal to vacate Debra's residence, Debra, herself, chose to move from the residence.
 {¶ 6} On January 2, 2001, while still residing at Debra's residence, Robert, commenced this litigation and filed a complaint against Debra for accounting of a joint ventureship, quantum meruit, and for declaratory judgment. Robert specifically asserted that he and Debra entered into an oral joint venture, or partnership, whereby the parties would continue to live together, make improvements and maintain the real property and would share equally in the profits and expenses associated with said premises. Debra answered said complaint and filed counterclaims against Robert for ejectment, trespass, forcible entry and detainer, quantum meruit, and conversion.
 {¶ 7} A hearing was held on the matter before a magistrate. On November 19, 2002, the magistrate entered his decision and, as pertinent to the appeal herein, concluded the following: Robert had no legal title to the real estate in question; Robert failed to substantiate his claim for quantum meruit damages in regard to the improvements made on said property; Debra should be denied recovery of alleged past due rent from Robert; Debra should be awarded a majority of the parties' disputed personal property, including the entertainment center, 1980 Harley Davidson motorcycle, hutch, family photographs, freezer, dishwasher, lawnmower, and the remainder of the non-disputed personal property located at Debra's residence; Robert should be awarded the washer and dryer; and Robert's request that Debra be required to submit a claim on his behalf to her homeowner's insurance for property which had been allegedly stolen from Debra's residence should be denied. Additionally, the magistrate decided that Debra should be awarded absolute and exclusive possession of the residence and realty. Robert was ordered to vacate the premises.
 {¶ 8} Both parties filed objections to the magistrate's decision. The trial court affirmed in part and modified in part the magistrate's decision. Pursuant to the trial court's order, in brief: Debra was awarded full title and exclusive possession of the real estate and residence thereon; Robert was ordered to vacate said premises; Debra was awarded $12,223.19 to be paid by Robert as damages for the fair rental value of Debra's residence; and Debra was not required to file an insurance claim on behalf of Robert.
 {¶ 9} In addition, the trial court modified the magistrate's decision and redistributed the disputed personal property as follows: Debra was awarded the lawn mower, Robert was awarded the 1980 Harley Davidson motorcycle, and each party was awarded one-half of the disputed household goods and furnishings, i.e., the washer and dryer, entertainment center, freezer, dishwasher, and hutch, to be chosen alternately by Debra and Robert until all of the disputed items were selected. A determination of who would be the first to choose was to be established by coin toss.
 {¶ 10} Robert now appeals the judgment of the trial court and sets forth four assignments of error for our review.
 ASIGNMENT OF ERROR NO. I Whether the trial court erred as a matter of law when itfailed to grant to the Robert his equitable interest in the realestate.
 {¶ 11} Robert alleges that he had made an oral agreement with Debra whereby he would share all profits and losses relating to the work, maintenance, and improvements Robert made on Debra's residence and realty during the time following the parties' divorce in 1989. Debra denies the existence of such agreement. Both the magistrate and the trial court did not find sufficient evidence of such an agreement to rule in Robert's favor on this issue. Nor do we.
 {¶ 12} As to the remaining equitable claims of Robert, the trial court determined that:
[h]ere [Debra] has a valid deed and [Robert] has not come tothis [c]ourt with `clean hands' as his own reprehensible conducthas resulted in this messy litigation[;] [Robert], who is askingthis [c]ourt to do equity is not entitled to equity * * * to rulethat [Robert] has a legal or equitable interest in his ex-wife'sreal estate would allow [Robert] to gain from his fraud * * *.
 {¶ 13} The United States Supreme Court, in applying the maxim "he who comes into equity must come with clean hands," has held that:
[i]t is one of the fundamental principles upon which equityjurisprudence is founded * * * before a complainant can have astanding in court * * * he must come into court with clean hands.* * * The governing principle is `that whenever a party who, asactor, seeks to set the judicial machinery in motion and obtainsome remedy, has violated conscience, or good faith, or otherequitable principle, in his prior conduct, then the doors of thecourt will be shut against him in limine; the court will refuseto interfere on his behalf, to acknowledge his right, or to awardhim any remedy.' * * * `he who asks [for] relief must have actedin good faith. The equitable powers of this court can never beexerted in behalf of one who has acted fraudulently * * *.'
Keystone Driller Co. v. General Excavator Co., 290 U.S. 240,244-245, emphasis added; citations omitted. In the case sub judice, Robert acknowledged to the trial court and to this Court that the reason for the divorce was to avoid collection of past due federal taxes. The "clean hands" maxim is appropriate to the case herein. Therefore, the trial court's determination to leave Robert where his own ruse placed him is not an abuse of discretion. Accordingly, Robert's first assignment of error is overruled.
 ASSIGNMENT OF ERROR NO. II Whether the trial court erred as a matter of law when it foundthat Debra was entitled to rent from the Robert when alandlord/tenant relationship did not exist between the Robert andthe Debra.
 {¶ 14} The magistrate recommended a denial of Debra's claim for alleged past due rent from Robert. Upon Debra's objection to the magistrate's decision, the trial court found that Debra had valid claims of ejectment, forcible entry and detainer, and trespass, and modified the magistrate's decision accordingly awarding Debra $12,223.19 in damages for past due rent owed by Robert.[2] Robert asserts that it was error for the trial court to award Debra past due rent because no landlord-tenant relationship existed. Robert's assignment of error is without merit.
 {¶ 15} R.C. 5303.03 equates to the common-law action in ejectment and is an action in law. Thornton v. Guckiean Co.,Inc. (1991), 77 Ohio App.3d 794, 798; citations omitted. Pursuant to R.C. 5303.03, ejectment is brought by a plaintiff who has legal estate or title and is entitled to possession of realty but is unlawfully denied possession by the defendant. Id. R.C.5303.03 provides that:
[i]n an action for the recovery of real property, it issufficient if the plaintiff states in his petition that he has alegal estate therein and is entitled to the possession thereof,describing it with such certainty as to identify the property,and that the defendant unlawfully keeps him out of thepossession. It is not necessary to state how the plaintiff'sestate or ownership is derived.
Because Robert unlawfully possessed the realty, Debra is entitled to recovery of the realty and Robert is liable for the reasonable rental value of the property for the time that he wrongfully possessed the realty.[3] See, Metzger v.Rogers (1932), 11 Ohio L. Abs. 659; Moser v. Basset (1927), 5 Ohio Law Abs. 56. In order to recover damages for ejectment Debra was not required to establish that a landlord-tenant relationship existed between her and Robert. Accordingly, Robert's second assignment of error is overruled.
 ASSIGNMENT OF ERROR NO. III Whether the trial court erred as a matter of law when itfailed
 to grant to Robert his personal property.
 {¶ 16} Robert specifically objected to the magistrate's decision regarding his alleged ownership interest in the personal property listed herein and all of the other non-disputed items of personal property located at Debra's residence. With the exception of the washer and dryer, the magistrate recommended awarding all of the items of disputed personal property, along with all of the other items of non-disputed personal property located at Debra's residence, to Debra. Upon objection by Robert, the trial court modified the magistrate's decision and redistributed the disputed property as follows: Robert was awarded the 1980 Harley Davidson motorcycle; Debra was awarded the lawn mower; and both Robert and Debra were awarded one-half interests in the remainder of the disputed household goods and furnishings, i.e., the washer and dryer, entertainment center, freezer, dishwasher and hutch, with distribution to be accomplished by each party alternately selecting one of the items of disputed property.
 {¶ 17} In his appeal to this court, Robert maintains that the trial court erred by awarding the lawnmower to Debra; by ordering Debra to receive all of the non-disputed items of personal property located at Debra's residence;[4] and by omitting the issuance of an order relative to the division of the family photographs.
 {¶ 18} As to the lawnmower, Robert specifically maintains that there was sufficient evidence that the parties jointly purchased the lawnmower and it should therefore not have been awarded to Debra. Our review of the record indicates that there was sufficient evidence upon which the trial court could reasonably decide to award sole ownership of the lawnmower to Debra.
 {¶ 19} As to the non-disputed items of personal property located at Debra's residence, as listed in the November 19, 2002 magistrate's decision, the only items of personal property in dispute in this matter were items acquired after the parties' dissolution of marriage, specifically, the hutch, entertainment center, lawnmower, washer and dryer, dishwasher, freezer, 1980 Harley Davidson motorcycle, and family photographs. Because the items of personal property were non-disputed at the time of the magistrate's decision, it was not an abuse of discretion for the trial court to affirm the magistrate's decision.
 {¶ 20} As to Robert's last assertion, we hold that the trial court, in error, failed to determine ownership of the family photographs. Civ.R. 53(4)(b) states:
The court shall rule on any objections. The court may adopt,reject, or modify the magistrate's decision, hear additionalevidence, recommit the matter to the magistrate withinstructions, or hear the matter. * * *
Because Robert had objected to the magistrate's decision that Debra receive the family photographs, the trial court was required to rule on this portion of Robert's objection pursuant to Civ.R. 53(4)(b). However, the court failed to do so. Accordingly, this issue must be remanded to the trial court to determine the proper distribution of the family photos.
 {¶ 21} Robert's third assignment of error is, therefore, sustained in part, as to the determination of the distribution of the family photographs, and overruled in part.
 ASSIGNMENT OF ERROR NO. IV Whether the trial court erred as a matter of law when itfailed to order the Debra to cooperate in the filing of aninsurance claim upon items stolen from the real estate.
 {¶ 22} Robert seeks to require Debra to file a homeowner's insurance claim to recover personal property allegedly owned by Robert and stolen from Debra's residence. The trial court upheld the portion of the magistrate's decision pertaining to Robert's alleged insurance claim.
 {¶ 23} We first note that the record before us, as it pertains to Robert's fourth assignment of error, is unclear. The record is devoid of a police report or clear account of the alleged theft and also does not contain a copy of Debra's homeowner insurance policy.[5] The record, however, does indicate that at the time of the alleged theft: Debra and Robert were not married; Robert did not have any legal right to possession or use of the residence; the homeowner's insurance policy was in Debra's name; and the personal property allegedly stolen was Robert's sole, personal property.
 {¶ 24} We hold that the trial court did not err in denying Robert's request that Debra file a homeowner's insurance claim on his behalf. A copy of Debra's homeowner's insurance policy is not in the record; therefore, there is no evidence that the policy insured any of Robert's personal property that may have been stolen from the residence. Moreover, Robert has failed to advance any legal theory to this Court which would oblige Debra to file such a claim.
 {¶ 25} Robert's fourth assignment of error is, therefore, overruled.
 {¶ 26} Having found error prejudicial to the appellant herein, in the particulars assigned and argued, we affirm in part and reverse in part the judgment of the Common Pleas Court of Wyandot County on the sole ground of the determination of the ownership and distribution of the family photographs and remand the matter for further proceedings consistent with this opinion.
Judgment affirmed in part, reversed in part and causeremanded.
Shaw, P.J., and Bryant, J., concur.
[1] The realty in issue is comprised of two separate parcels of land
[2] The fair rental value of the residence was determined by a certified appraiser which appraised the fair rental value of the residence to be $700 per month. The trial court also awarded Debra $1 in nominal damages stemming from Robert's act of civil trespass against Debra.
[3] The trial court determined rent was to be paid from October 17, 2001, the date on which the trial court adopted the October 2, 2001 magistrate's decision informing Robert that he had no legal interest in the residence or realty, until Debra regained sole possession of said residence.
[4] The items are referenced as "non-disputed" items because they are the items of personal property awarded to Debra at the time of the parties' dissolution of marriage, whereas the "disputed" items of personal property are the items acquired after the parties' dissolution, listed above.
[5] The exact date of the alleged theft is also not clear from the record. While Robert's testimony is unclear on this matter, it is evident that the incident allegedly occurred sometime after January 1, 2002. Furthermore, it appears from "Plaintiff's Exhibit 8," submitted by Robert to the trial court, that Robert faxed a list of the alleged missing and damaged property to the Wyandot County Sheriff's Office on May 23, 2002.