PETER LONG v. VENDEVER B. MOLER.

Where a deed of conveyance, with a covenant, that at the time of the ensealing and execution thereof, the premises are clear and free of all incumbrances whatever, is executed subsequent to the day fixed by the statute when the lien of the State for the taxes of the current year attaches, such lien is an incumbrance within the scope of the covenant, and for which an action on the covenant will lie.

Incumbrances known to the parties at the time of the conveyance, are not presumed to be excluded from the operation of such covenant.

Parol evidence is not admissible to show an understanding of the parties that such incumbrances were excluded from the operation of the covenant.

PETITION in error.   Reserved in the District Court of Montgomery county.

The facts and questions in the case are stated in the opinion of the court.

*C. L. Vallandigham*, for plaintiff, cited *Tremain* v. *Siming*, Wright's Rep. 644; *Porter* v. *Noyes*, 2 Greenleaf 22; *Townsend* v. *Weld*, 8 Mass. Rep. 146; *Harlow* v. *Thomas*, 15 Pick. Rep. 68; 1 Greenleaf's Ev., sec. 281; 2 Starkie's Ev. 549; *Dunn* v. *White*, 1 Ala. Rep. 645; *Bean* v. *Mayo*, 5 Greenleaf Rep. 94; *Hubbard* v. *Norton*, 10 Cowen Rep. 431; and other cases cited in these.

*Lowe & Booth*, for defendant, cited 3 West. Law Journal 309, and cases there cited, to the point that a grantor in a deed does not warrant against known incumbrances.

BRINKERHOFF, J.   The facts in this case are these : On the 23d day of January, 1851, the defendant, by contract under seal, agreed to sell and convey to plaintiff a farm.  A part of the purchase money was to be paid in hand, a part on the first of April following, at which time plaintiff was to have possession; and on the payment of the balance of the purchase money, or the execution of his notes therefor by the plaintiff, bearing interest from said first day of April, the defendant was to execute a good and sufficient deed for the premises.   The payments having been made and possession given in accordance with the terms of, and at the time mentioned in the contract, the defendant, on the 18th day of June, 1851, executed to plaintiff a deed of conveyance containing full covenants of warranty.   The taxes levied on the premises for the year 1851 not being paid by the defendant, the plaintiff paid them when due, and now brings his action on the covenant against incumbrances to recover the amount of those taxes.   On this state of fact, two questions are presented for our determination :

1.  Were these taxes an incumbrance, or lien on the premises at the time of the conveyance, to wit, June 18th, 1851 ?   And if so,

2.  Is that lien or incumbrance properly within the scope of the covenant against incumbrances embraced in the deed ?

The first of these questions seems to be settled, so far as express legislation can settle any question, by the twenty-first section of the act of March 14, 1831, " pointing out the mode of levying taxes," (Swan's Revised Statutes of 1841, p. 913,) in force at the time of the execution of this deed, and which is as follows :

" The lien of the State, for all taxes for State, county, school, road or township purposes, shall attach on all real estate, on the first day of March, annually ; and such lien shall be perpetual, for the amount of all taxes which heretofore have accrued, or which may hereafter accrue, with the interest and penalties in each case, until such taxes, interest and penalties shall be fully paid ; which lien shall in no wise be affected or destroyed by any sale or transfer of any such real estate."

Long v. Moler.

This enactment is plain, explicit and free from all ambiguity; and it fixes on all real estate subject to taxation a specific lien, dating from the first of March of each year, for the amount of the taxes of the current year and all prior delinquencies. The statute makes the taxes for the current year a debt chargeable on the land from that date, and from that date declares the existence of a lien. The fact that the amount of the taxes for the current year is not, at the date of the declared lien, ascertained, and cannot at that date be paid, surely cannot operate to avoid a lien fixed by express enactment. As between private parties, a mortgage lien, or a mechanic's lien, may subsist in full force and unquestionable validity, and yet so dependent on contingencies arising out of the contract of the parties or the nature of the case, that the amount is neither immediately ascertainable or payable.

And what object or design could the legislature have had in the enactment of this statute? As for anything to be attained by the State in connection with its financial policy, we can see no motive whatever for this enactment. The day therein named has no reference to the time of the assessment or valuation of property for taxation, nor the time for placing property on the duplicate. It does not fix the commencement or termination of a fiscal year. No reports of financial officers, nor settlements or adjustments of accounts, are made in reference to the first day of March. Yet we are neither inclined nor at liberty to suppose the enactment to be without design and senseless. What then was its design? We can answer the inquiry only by supposing that the legislature contemplated the occurrence of just such cases as the one before us. That the question would arise between vendor and vendee of lands, and possibly between other parties, as to who were bound to pay taxes of a current year; and to enable parties to determine this question—in order that parties might know each other's rights and duties, and regulate their contracts accordingly—this enactment was passed; and regarded in this light, the policy was wise and salutary.

2. The second question, aside from authority, is, in this case, answered by the language of the covenant sued on. It is this:

18

" That *at the time of the ensealing and execution of said deed,* the said lands are free and clear of all incumbrances whatsoever." The covenant itself, in express terms, relates to the time of the execution of the deed containing it. The covenant embraces in terms, " all incumbrances whatsoever," and excepts none whatsoever. It was in the power of the parties, at the time of the execution of the deed, to have engrafted on the covenant an exception of the taxes of the current year, if such had been their agreement, and the statute above quoted afforded them all the information requisite to enable them to act intelligently. The parties may have had an understanding resting in parol, to the effect that the taxes of the current year were to be excepted from the operation of this covenant. But this we cannot know; for parol evidence is inadmissible to contradict or vary the plain provisions of the deed. The application of the rule may possibly, in this case, work injustice to the defendant. If so, we can only regret it; for the rule itself, being a salutary one, must be maintained.

It has been suggested that the lien of the State for taxes, was one which could not but be known to the parties at the time of the making of the deed; and it is thence argued the covenant ought not to be held to extend to that lien. It is true there are cases which countenance the doctrine, that known incumbrances are presumed to be excepted from the operation of the covenant. But a majority of the court are of opinion that the weight of reason and authority alike are clearly the other way. Rawle on Covenants for Title 149, *et seq.* Nothing is more common, we apprehend, than for parties to make and accept covenants of this kind with a full knowledge of existing incumbrances; the covenantor relying on his ability to discharge them, and the covenantee on the security which the covenant affords; and " the fact of a purchaser having notice of an incumbrance, is the very reason of his taking a covenant within whose scope it is included." And for us to hold, contrary to the admitted general current of authority, and, we think, the general understanding of the profession, that known incumbrances are excepted from the operation of the covenant, would, by invalidating securities held in

faith of a contrary doctrine, largely eventuate in consequences of most iujurious character.

*Judgment reversed.*

BARTLEY, J., dissented.