THORNTON, Trustee, Appellant,

v.

GUCKIEAN & COMPANY, INC. et al., Appellees.

[Cite as *Thornton v. Guckiean & Co., Inc.* (1991), 77 Ohio App.3d 794.]

Court of Appeals of Ohio,
Butler County.

No. CA90-04-065.

Decided Oct. 21, 1991.

*Rolf & Kirkwood Co., L.P.A.,* and *Richard A. Paolo,* for appellant.
*Lerner, Sampson & Rothfuss* and *Rick D. DeBlasis,* for appellees.

KOEHLER, Judge.

This appeal arises from a dispute concerning ownership of certain real estate. Plaintiff-appellant, James Thornton, trustee, commenced an action to quiet title. Defendants-appellees, Guckiean & Company, Inc. and Ralph T. Guckiean, answered and filed a counterclaim for ejectment. Each party moved for summary judgment. The trial court denied appellant's motion for summary judgment on his complaint and granted judgment to appellees on their counterclaim.

Appellant filed a timely appeal setting forth two assignments of error as follows:

Assignment of Error No. 1:

"The trial court erred to the prejudice of plaintiff by divesting him of his fee title to the subject real estate and conveying that fee title to the defendants."

Assignment of Error No. 2:

"The trial court erred to the prejudice of plaintiff in failing to award plaintiff summary judgment against defendants ordering title quieted in plaintiff's name only."

For the reasons which follow, we find the assignments of error are well taken and reverse the judgment of the trial court.

The record reveals that on or about August 16, 1977, Charles and Rosalyn Deisler were the record owners of the property in question, Lot No. 2 of the Maples Subdivision in Union Township. On that date, the Deislers entered into a land contract to sell the property to Herman and Evelyn Britton.

Under the contract, the Brittons were to make monthly payments over an unspecified period with title to transfer upon payment of the full purchase price of $49,500.

As a result of various unrelated financial dealings, the Brittons became indebted to appellees. On October 16, 1978, they executed the following documents as security for the debt: (1) a promissory note in the sum of $70,000; (2) a mortgage on several parcels of real estate including the property in question; and (3) an assignment of their interest in the land contract. Both the mortgage and the assignment of the land contract were properly recorded.

On April 30, 1979, the Brittons completed their obligation under the land contract and received a deed for the property from the Deislers. On October 29, 1979, they executed a deed for the property to Health Care Services, Inc. That same day, appellees released the mortgage encumbering the property for a payment of $1,000. However, the land contract still remained uncanceled of record.

Nevertheless, the Brittons' debt to appellees was not fully paid. On February 18, 1980, appellees filed suit against the Brittons to obtain judgment on the promissory note and to foreclose the mortgage from the Brittons on other property. The property in question in the present case was specifically dismissed from the foreclosure action.

On June 1, 1980, Health Care Services, Inc. conveyed the property to appellant by a general warranty deed. Appellant entered into possession of the premises and has remained in possession to date. Approximately nine years after appellant acquired record title, a title examination conducted in contemplation of a sale discovered the assignment of the Brittons' interest in the land contract. Therefore, on May 22, 1989, appellant commenced his action to quiet title, and appellees filed their counterclaim.

■ As previously noted, the trial court denied appellant's motion for summary judgment and granted summary judgment to appellees. Summary judgment is appropriate if (1) there is no issue of material fact, (2) the moving party is entitled to judgment as a matter of law, and (3) reasonable minds can come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made, who is also entitled to have the evidence construed most strongly in his or her favor. *Harless v. Willis Day Warehousing Co.* (1978), 54 Ohio St.2d 64, 66, 8 O.O.3d 73, 74, 375 N.E.2d 46, 47.

We will first consider the nature of appellees' interest in the premises as it relates to their action for ejectment.

Appellees counterclaimed for recovery of real property as provided in R.C. 5303.03 and prayed that title to the real property be vested in them. R.C. 5303.03 reads as follows:

"In an action for the recovery of real property, it is sufficient if the plaintiff states in his petition that he has a legal estate therein and is entitled to the possession thereof, describing it with such certainty as to identify the property, and that the defendant unlawfully keeps him out of the possession. It is not necessary to state how the plaintiff's estate or ownership is derived."

The counterclaim brought under this statute equates to the common-law action in ejectment and is an action in law. *Avery v. Avery* (1958), 107 Ohio App. 199, 200, 8 O.O.2d 91, 92, 157 N.E.2d 917, 918; *Norris v. Bhd. of Ry. Clerks Natl. Bank of Cincinnati* (1932), 43 Ohio App. 396, 397–398, 183 N.E. 92, 93; *Todd v. Sailing* (Apr. 23, 1990), Warren App. No. CA89–03–022, unreported, at 7–8, 1990 WL 50006. Ejectment under the Revised Code is brought under averments that the plaintiff has a legal estate and is entitled to the possession but is unlawfully kept out of possession by the defendant. *Turnbull v. Xenia* (1946), 80 Ohio App. 389, 392, 36 O.O. 91, 92, 69 N.E.2d 378, 379. Even though under R.C. 5303.03 all questions in respect to the parties' title, legal or equitable, may be raised in an action for recovery of real property, the plaintiff must still produce evidence of a better legal estate or title in order to prevail. *Avery, supra*, 107 Ohio App. at 202, 8 O.O.2d at 93, 157 N.E.2d at 919; *Procterville v. Boston* (June 24, 1985), Lawrence App. No. 1730, unreported, 1985 WL 9484.

The uncanceled assignment of the land sale contract from the Brittons is the basis for appellees' claim of ownership of the premises. Following the execution of the land sale contract, the Brittons became the equitable owners of the property in question. *Blue Ash Bldg. & Loan Co. v. Hahn* (1984), 20 Ohio App.3d 21, 23–24, 20 OBR 22, 24–25, 484 N.E.2d 186, 188. They received an equitable interest in the contract as personalty as well as an equitable interest in the land. *Basil v. Vincello* (1990), 50 Ohio St.3d 185, 189, 553 N.E.2d 602, 606; *Star Bank v. Bakonyi* (July 22, 1991), Butler App. No. CA90–06–110, unreported, 1991 WL 135000; Comment, Forfeiture: The Anomaly of the Land Sale Contract (1977), 41 Alb.L.Rev. 71. However, the legal title remained with the sellers, the Deislers, until the Brittons completed their obligations under the contract. *Blue Ash Bldg. & Loan Co., supra*, 20 Ohio App.3d at 23–24, 20 OBR at 24–25, 484 N.E.2d at 188; *Bakonyi, supra*, at 5. Accordingly, at the time of the assignment, the Brittons could convey only an equitable interest to appellees since they had not yet completed their obligations under the land contract. When the Brittons eventually received legal title to the property from the Deislers, they did not convey it to

appellees. Instead, they conveyed the legal title to Health Care Services, Inc., which eventually conveyed it to appellant.

Appellees never acquired legal title in the property; they held only an equitable interest. Accordingly, they could not meet their burden of showing better legal estate than appellant and could not prevail in their action for ejectment. We hold that the trial court erred in granting summary judgment to appellees on their counterclaim.

■ We now consider the parties' respective claims to a quiet title in the premises. Appellees obtained their interest in the property through the assignment of the land contract and the mortgage executed on the property by the Brittons in October 1978. As to the assignment of the land contract, we have already held that the Brittons could only transfer the interest they had at that time, an equitable interest, which they assigned to appellees as security for the Brittons' debt. This equitable interest creates a cloud on the title to the property. Further, the land sale contract remains uncanceled of record and is notice to prospective purchasers of an outstanding interest in the real estate. See *State Ave. Loan & Bldg. Co. v. Spiegel* (1936), 131 Ohio St. 488, 6 O.O. 158, 3 N.E.2d 412; *Harris v. Paul* (1930), 37 Ohio App. 206, 174 N.E. 615.

■ At the same time they assigned the land contract, the Brittons also executed a mortgage on the property. As with the assignment of the land contract, the Brittons' mortgage was made prior to the time they received legal title to the Deislers' property. Where an individual who has contracted to purchase real property mortgages the property before actually receiving legal title, the mortgage does not create a legal lien but operates only to create a lien upon the mortgagor's equitable interest and is therefore an equitable mortgage. *Alemania Loan & Bldg. Co. No. 2 v. Frantzreb* (1897), 56 Ohio St. 493, 47 N.E. 497; see, also, *Coe v. Columbus, Piqua & Indiana RR. Co.* (1859), 10 Ohio St. 372, 390–391; *Clark v. Strickler Bros. Canning Co.* (1919), 11 Ohio App. 250, 253.

After receiving these conveyances from the Brittons, appellees held an equitable interest in the property coming to them by two separate instruments. Under the equitable mortgage, they obtained a right to foreclose upon the mortgagors' equitable interest if the mortgagors were in default. As assignees of the land sale contract, appellees could sell or further assign their interest therein or complete the contract and acquire title to the property. They did nothing.

■ Subsequently, the Brittons completed the land sale contract with the Deislers and obtained a warranty deed. The general rule is that a contract for the purchase of real estate is merged into the deed conveying the property. Where a deed is delivered and accepted without qualification

pursuant to a contract for the sale of real estate, no cause of action upon the contract exists because of the merger. *Fuller v. Drenberg* (1965), 3 Ohio St.2d 109, 32 O.O.2d 91, 209 N.E.2d 417, paragraph one of the syllabus; *Medeiros v. Guardian Title & Guar. Agency, Inc.* (1978), 57 Ohio App.2d 257, 259, 387 N.E.2d 644, 646. Therefore, upon execution and recording of the deed from the Deislers to the Brittons, the equitable interest and the legal interest in the property were merged by operation of law and the land sale contract, except for certain exceptions not relevant here, was extinguished. The sale of the real property was concluded and the Brittons conveyed the entire interest in the property to Health Care Services, Inc., appellant's immediate predecessor in title.

Nevertheless, the mortgage and the assignment of the land sale contract were still of record and constituted notice to prospective purchasers of the property of the outstanding interest. In order to sell their interest in the real estate, the Brittons found it necessary to clear the title of appellees' outstanding interest. To do so, the Brittons and appellees entered into a written agreement to obtain a release of the premises from the recorded mortgage. Appellees received consideration of $1,000, promises of additional payments on the Brittons' obligation and enhancement of their standing on other property which was security for the Brittons' obligation.

The release of the mortgage on the premises was filed of record. The circumstances herein suggest that appellees had knowledge of the Brittons' acquisition of title and had actual notice of the impending sale of the real estate and that they released the mortgage to allow the sale to go forward. We hold that the release of the mortgage premises was a release of all interest of appellees in the property. No cancellation of the assignment of the land sale contract was executed nor was one needed to extinguish whatever equitable interest appellees had in the property.

Appellees argue that they released the Brittons' mortgage only for the purpose of the sale and that they preserved their interest in the land sale contract as security. The record fails to support such contention.

Appellant, on the other hand, argues that the failure to cancel the assignment at the time the mortgage was released was inadvertent. We agree. We believe the record supports the conclusion that appellees intended to release all interests in the property. Approximately six months after the release of the mortgage and the Brittons' sale of the property to Health Care Services, Inc., appellees filed suit against the Brittons because of the default on the promissory note, alleging a principal balance due of $34,000. They sought foreclosure on various parcels of property mortgaged by the Brittons but specifically excepted any claim to the real estate in question in the present case. Appellees took no action for nine years to assert any interest in the

property. After the release of the mortgage and the Brittons' subsequent default, appellees apparently did nothing to try to recoup their loss. Appellees raised only their alleged interest upon appellant's commencement of his action to quiet title. In sum, nothing in the record supports appellees' self-serving statement that they intended to preserve their interest in the property as security for the Brittons' debt. Rather, we believe the exemption of the instant property from foreclosure was indicative of appellees' recognition that they had no interest in the property and not an indication they intended to preserve a claim against a third party.

In conclusion, we hold that the interest appellees acquired from the Brittons through the equitable mortgage and the assignment of the land sale contract for the described property were merged into the mortgage when the Brittons obtained a deed to the premises and that the release executed by appellees was intended to and did extinguish any claim of appellees to any interest in the real property.

We find that the assignments of error are well taken, and the judgment of the trial court is vacated. Pursuant to App.R. 12(B), we find that appellant James Thornton, trustee, is the record owner of said premises against all claims of appellees. It is further ordered that the counterclaim herein be dismissed with prejudice. It is the further order of this court that the Butler County Recorder cancel of record the assignment of the land sale contract appearing on page 164 of book 63 of the records of Butler County, Ohio.

*Judgment accordingly.*

JONES, P.J., and WILLIAM W. YOUNG, J., concur.