DIETL et al., Appellees,

v.

SIPKA, Appellant.

[Cite as *Dietl v. Sipka*, 185 Ohio App.3d 218, 2009-Ohio-6225.]

Court of Appeals of Ohio,
Eleventh District, Trumbull County.

No. 2009–T–0025.

Decided Nov. 25, 2009.

Plunkett & Cooney, P.C., Amelia A. Bower, and David L. Van Slyke, for appellees.

Guarnieri & Secrest, P.L.L. and Randil J. Rudloff, for appellant.

DIANE V. GRENDELL, Judge.

{¶ 1} Defendant-appellant, Catherine A. Sipka, appeals the judgment entry of the Trumbull County Court of Common Pleas, in which the trial court granted plaintiff-appellee, Robert F. Dietl's, motion for summary judgment. For the following reasons, we affirm the decision of the trial court.

{¶ 2} Prior to July 2002, Sipka and her husband, Albert R. Sipka, were co-owners and residents of real estate located at 8598 Hunter's Trail in Warren, Ohio. On July 8, 2002, Sipka and Albert ended their relationship by way of dissolution and a separation agreement. The separation agreement provided that Sipka "shall receive Twenty–Five Thousand Dollars ($25,000.00) as her interest in

the marital residence. [Albert] shall attempt to refinance the property to immediately pay [Sipka] her equity. If [Albert] is unsuccessful in obtaining the refinancing within ninety (90) days [Sipka] shall retain a lien for Twenty Five Thousand ($25,000.00) on the property, bearing six percent (6%) interest. The Twenty Five Thousand Dollars ($25,000.00) must be paid to [Sipka] no later than thirty six (36) months from the date of the dissolution."

{¶ 3} Prior to the finalization of the divorce, Albert refinanced the mortgage; however, the refinanced amount was not enough to pay Sipka her interest in the residence. After the divorce, on November 18, 2002, Sipka executed a quitclaim deed to Albert containing the following language: "[e]xcepting and reserving a lien in the amount of Twenty Five Thousand Dollars ($25,000) bearing six per cent (6%) interest pursuant to the Separation Agreement filed in the Court of Common Pleas, Division of Domestic Relations, Trumbull County, Ohio."

{¶ 4} On February 13, 2004, Albert's mortgage was foreclosed. The foreclosure failed to name Sipka as a party, and the title work did not disclose any potential defects as to the title. In May 2006, the property sold at public auction for $157,000, an amount less than the first mortgage on the house, to Countrywide Home Loans, Inc. Countrywide assigned its bid to Federal National Mortgage Association (Fannie Mae).

{¶ 5} Robert Dietl and his wife, Angela, purchased the property from Fannie Mae on October 18, 2007.[1] The instant action stems from the Dietls' response to Sipka's claim that she retains a lien on the house.

{¶ 6} On April 16, 2008, the Dietls filed a complaint for declaratory judgment and to quiet title. Both the Dietls and Sipka filed motions for summary judgment. On March 23, 2009, the trial court granted the Dietls' motion for summary judgment on their complaint for declaratory judgment and to quiet title. The trial court held that "no certificate of judgment was filed against Albert Sipka, and therefore, no lien attached, even though one was referenced by way of the dissolution case in the quit claim deed. * * * The unperfected lien of [Sipka] * * * would have had no legally recognizable attachment to Albert's property until such time as it was properly perfected." Consequently, the court found that "as a matter of law * * * Sipka has no lien on the parcel of land commonly known as 8598 Hunters Trail."

{¶ 7} Sipka timely appeals and raises the following assignment of error:

{¶ 8} "The trial court erred in granting Dietl summary judgment against Sipka and in denying Sipka's motion for summary judgment against Dietl."

---

1. Sipka admits that she "knew [the house] had been foreclosed on prior to [the Dietls'] purchasing it."

{¶ 9} "Pursuant to Civ.R. 56(C), summary judgment is appropriate when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." *Holik v. Richards,* 11th Dist. No. 2005–A–0006, 2006-Ohio-2644, 2006 WL 1459677, at ¶ 12, citing *Dresher v. Burt* (1996), 75 Ohio St.3d 280, 293, 662 N.E.2d 264. "In addition, it must appear from the evidence and stipulations that reasonable minds can come to only one conclusion, which is adverse to the nonmoving party." Id., citing Civ.R. 56(C). Further, the standard by which we review the granting of a motion for summary judgment is de novo. Id., citing *Grafton v. Ohio Edison Co.* (1996), 77 Ohio St.3d 102, 105, 671 N.E.2d 241.

{¶ 10} Accordingly, "(s)ummary judgment may not be granted until the moving party sufficiently demonstrates the absence of a genuine issue of material fact. The moving party bears the initial burden of informing the trial court of the basis for the motion and identifying those portions of the record which demonstrate the absence of a genuine issue of fact on a material element of the nonmoving party's claim." *Brunstetter v. Keating,* 11th Dist. No. 2002–T–0057, 2003-Ohio-3270, 2003 WL 21437016, at ¶ 12, citing *Dresher,* 75 Ohio St.3d at 292, 662 N.E.2d 264. "Once the moving party meets the initial burden, the nonmoving party must then set forth specific facts demonstrating that a genuine issue of material fact does exist that must be preserved for trial, and if the nonmoving party does not so respond, summary judgment, if appropriate, shall be entered against the nonmoving party." Id., citing *Dresher,* 75 Ohio St.3d at 293, 662 N.E.2d 264.

{¶ 11} The Dietls contend that the "alleged lien is a nullity because it is not a lien under R.C. 2329.02 or a mortgage under R.C. 5302.12." "Sipka lost any right to priority when she signed the refinancing mortgage without making sure that she would get paid." Moreover, "[g]iven the plethora of choices available to her to perfect her claim, the decision to reserve her claim in the Quit Claim Deed was fatal."

{¶ 12} Sipka asserts that she "specifically encumbered the property via her properly recorded deed," and "as a matter of law [she] retained and still has a valid and enforceable lien or encumbrance against the real estate in issue and * * * the trial court was in err to find otherwise." She argues that the lien was not an unfiled judgment lien; it was a lien "arising from contract * * * memorialized by a recorded Quit Claim Deed."

{¶ 13} Sipka claims that her reservation in the quit claim deed is an encumbrance under R.C. 5301.25(A), which provides that "[a]ll deeds, land contracts * * *, and instruments of writing properly executed for the conveyance or encumbrance of lands * * * shall be recorded in the office of the county recorder of the county in which the premises are situated. Until so recorded or filed for record, they are fraudulent insofar as they relate to a subsequent bona fide

purchaser having, at the time of purchase, no knowledge of the existence of that former deed, land contract, or instrument." We disagree.

{¶ 14} This court has previously defined "encumbrance" to mean "[a]ny right to, or interest in, land which may subsist in another to diminution of its value, but consistent with the passing of the fee by conveyance. * * * A claim, lien, charge, or liability *attached to and binding* real property; e.g. a mortgage; judgment lien; mechanics lien; lease; security interest; easement or right of way; accrued and unpaid taxes. If the liability relates to a particular asset, the asset is encumbered." (Emphasis added.) *Liddy v. Studio* (Apr. 11, 1997), 11th Dist. No. 96–G–2009, 1997 WL 184763, at *3, quoting Black's Law Dictionary (6th Ed.1991) 527. Because the lien was not perfected at the time of the quitclaim deed, it does not qualify as an encumbrance. See *Liddy*, 1997 WL 184763, at *3 ("[I]f the tap-in fee had been mandatory and in effect at the time of the sale, then it would have qualified as an encumbrance entitling appellants to relief. However, under the facts as they existed, the trial court properly granted summary judgment in favor of appellee based upon its determination that the tap-in fee was not an encumbrance").

{¶ 15} R.C. 2329.02 provides, "Any judgment or decree rendered by any court of general jurisdiction * * * within this state shall be a lien upon lands and tenements of each judgment debtor within any county of this state *from the time there is filed in the office of the clerk of the court of common pleas of such county a certificate of such judgment, setting forth the court in which the same was rendered, the title and number of the action, the names of the judgment creditors and judgment debtors, the amount of the judgment and costs, the rate of interest, if the judgment provides for interest, and the date from which such interest accrues, the date of rendition of the judgment, and the volume and page of the journal entry thereof.*" (Emphasis added.)

{¶ 16} "R.C. 2329.02 outlines the procedure for converting judgments into liens. * * * [N]o judgment lien is created or enforceable against real property unless a certificate of judgment is filed in accordance with R.C. 2329.02." *Campbell v. Campbell* (Mar. 26, 1992), 4th Dist. No. 91 CA 17, 1992 WL 56794, at *4; *First Fed. S. & L. Assn. v. Dus*, 8th Dist. Nos. 79018 and 79039, 2003-Ohio-3639, 2003 WL 21545126, at ¶ 27 ("[i]t is well settled that unless a certificate of judgment is filed in accordance with R.C. 2329.02, no judgment lien is *created or enforceable* against real property"). (Emphasis added.)

{¶ 17} " 'Judgment liens are creatures of statute. From its earliest decisions, this court has recognized that the creation, existence and validity of judgment liens are strictly dependent upon statutory provisions. [See] *Davis v. Messenger* (1867), 17 Ohio St. 231; *Kilbreth v. Diss* (1873), 24 Ohio St.2d [sic.

Ohio St.] 379; *Tucker v. Shade* (1874), 25 Ohio St. 355; *Gorrell v. Kelsey* (1883), 40 Ohio St. 117.'" *Campbell,* 1992 WL 56794, *4, quoting *Dressler v. Bowling* (1986), 24 Ohio St.3d 14, 15, 24 OBR 12, 492 N.E.2d 446.

{¶ 18} Sipka obtained the lien interest in the marital property pursuant to the separation agreement. The lien was the result of a legal proceeding to dissolve the marriage of Albert and Sipka. Although the lien stems from Sipka's separation agreement, which is a contract between the parties, the lien was never binding upon them until further action was taken. Thus, at the time of the reservation of the lien in the quitclaim deed, there was not a perfected lien to reserve, because Sipka failed to perfect the judicial lien according to R.C. 2329.02.[2] Additionally, the reservation in the quitclaim deed would put title examiners and purchasers on notice only that there was a "lien" on the property, which, upon further investigation, would reveal there was not a perfected lien recorded on the property.

{¶ 19} Even though Sipka never perfected her lien, it can be argued that she still had an interest of $25,000 in the property. In spite of this, after the foreclosure and the parties to the foreclosure had been paid their interests, Sipka's interest was extinguished and mooted.

{¶ 20} Although Sipka was not provided notice to the foreclosure, this is a moot point. Even if Sipka had been a party to the foreclosure, there were not sufficient funds for Sipka to be paid her interest. The foreclosure judgment entry stated that "the sum of $160,259.45, with interest at the rate of 7.5 percent per annum from August 1, 2003, together with advances for taxes, insurance and otherwise expended, plus costs" were to be paid to the coplaintiffs, Countrywide Home Loans, Inc. and Mortgage Electronic Registration Systems, Inc., as nominee for lender. The journal entry confirming sale ordered the sheriff to pay the claims from the sale price in the order of their priority, and Countrywide Home Loans received only partial satisfaction of its judgment, $156,194.127. Thus, even if Sipka had received notice of the foreclosure and had asserted her purported interest, she would not have had priority over the mortgage lender and would not have received any proceeds, as there were no proceeds left to collect. R.C. 5301.23 ("[t]he first mortgage presented shall be the first recorded, and the first mortgage recorded shall have preference").

{¶ 21} Additionally, because all the proceeds have been distributed, the case is moot. *Bankers Trust Co. of California, N.A. v. Tutin,* 9th Dist. No. 24329, 2009-Ohio-1333, 2009 WL 763994, at ¶ 16 ("[i]n foreclosure cases, as in all other civil actions, after the matter has been extinguished through satisfaction of

---

**2.** Alternatively, Sipka could have filed a corresponding mortgage deed pursuant to R.C. 5302.12 to secure her interest in the marital residence.

the judgment, the individual subject matter of the case is no longer under the control of the court and the court cannot afford relief to the parties to the action. Because there is no live controversy before this Court, the appeal is dismissed as moot") and ¶ 15 ("R.C. 2329.45 does not even suggest that the appealing party also has a remedy after the distribution of the proceeds of the sheriff's sale, and it cannot reasonably be construed to preserve a controversy that has been extinguished"); *Aurora Loan Servs. v. Kahook,* 9th Dist. No. 24415, 2009–Ohio– 2997, 2009 WL 1799352, at ¶ 3 and ¶ 7 (appellants claimed that they "had not been personally served with the foreclosure action" after a decree of foreclosure was entered and a writ of possession was issued. The appellants subsequently filed a motion to quash the writ and stay the execution of judgment. The court held that because the trial court had disbursed the funds, "the judgment in this case has been satisfied and, as no live controversy exists, we must dismiss the appeal as moot").[3]

{¶ 22} For the foregoing reasons, the judgment entry of the Trumbull County Court of Common Pleas, granting the Dietls' motion for summary judgment, quieting title, is affirmed. Costs to be taxed against appellant.

Judgment affirmed.

O'TOOLE, J., concurs.

TRAPP, P.J., dissents.

O'TOOLE, Judge, concurring.

{¶ 23} The majority opinion in this matter rests upon whether or not a judgment lien was filed here. I concur but for a different reason, not wholly inconsistent with the majority's approach.

{¶ 24} The quitclaim deed acts upon filing pursuant to R.C. Chapter 5301 to transfer the title of the property between the grantor and the grantee without any warranties. Conversely, if the grantor wishes to issue a warranty deed, R.C. 5302.05 requires that all clouds to the title must be researched and cleared prior

---

**3.** The instant case is distinguishable from *Swanbeck v. Sheaves* (Mar. 7, 1986), 6th Dist. No. L– 85–237, 1986 WL 2957, a case the dissent cites maintaining that the deed should be treated as an equitable mortgage. In *Swanbeck,* the trial court concluded that the parties had an equitable mortgage because appellant had an agreement to "reconvey the land upon payment of [an] outstanding debt." Id. at *4. In the instant case, Sipka did not have an equitable mortgage. Sipka did not transfer her interest in the property as security for a debt; she was never required or ordered to transfer her interest to Albert. The separation agreement merely permitted, but did not mandate, Albert to refinance in order to pay Sipka her interest in the marital residence. Additionally, in *Swanbeck,* the new owner of the property admitted that he had actual notice that the party asserting the equitable mortgage had invested funds in improving the property. There is no evidence that the Dietls knew that Sipka had any interest in the marital property.

to issuing the deed, a process that guarantees that the property is free from clouds upon the title. The question in the case at bar is whether a notation of money owed upon a contract or divorce settlement written upon the actual quitclaim deed is sufficient to cloud the title. I assert that it is not. The proper way to secure a single financial obligation between the grantor and grantee upon a piece of real property is by filing a corresponding mortgage deed pursuant to R.C. 5302.12.

{¶ 25} A judicial or judgment lien under R.C. 2329.02 is normally filed by third-party creditors who do not have a property interest in the subject property. Nor would they have privity to require a promissory note and a secured mortgage as between the original parties, the grantor or the grantee, to the transaction. The third party is merely a creditor to one of the original parties to the transaction and does not as such have a connection or property interest in the real property.

{¶ 26} A judicial or judgment lien would serve to encumber all property owned by appellee, not just the real estate at issue in the divorce decree. A judgment lien in this humble writer's opinion, although sufficient to stop the transfer of the property, is far too blunt an instrument for the task, is not required, and is not the best practice, given these facts. I assert that the parties could have signed a quitclaim deed with a promissory note and mortgage deed. Thus, properly perfecting the lien, either scenario would have been sufficient pursuant to the terms of the divorce. In this writer's humble opinion, the dissent's position disregards statutory requirements for encumbering debt upon real property and flies in the face of equity to all innocent third-party purchasers for value who acquired the property in good faith after the sale.

{¶ 27} Therefore, I concur, but write separately with the majority opinion in that the quitclaim deed altered on its face, though properly recorded, is not sufficient to secure the interest of appellant in this matter.

TRAPP, Presiding Judge, dissenting.

{¶ 28} I respectfully dissent. The majority determined that because a lien was not perfected by the recording of the quitclaim deed, there was no perfected interest reserved by the quitclaim deed. I disagree. I believe that the transactions here should not be determined by their labels, but by their substance. Sipka's property interest predated the separation agreement. The separation agreement is not the *source* of her interest in the subject real estate, but a contract in which she agreed to transfer her interest in the property *except for $25,000*. She originally owned a half interest in the real property. She surrendered this interest, *except for $25,000*, by way of the quitclaim deed, which was properly recorded pursuant to R.C. 5301.25. A deed intended to secure performance of an obligation will be treated as an equitable mortgage whether or not

such interest is disclosed by the instrument. See *Swanbeck v. Sheaves* (Mar. 7, 1986), 6th Dist. No. L–85–237, 1986 WL 2957.

{¶ 29} Because of her retained interest in the real property, equity and due process required that she receive notice of the foreclosure. Persons having liens upon land, not being made parties to the proceeding, will not be affected by a decree subjecting such land to sale. *Myers v. Hewitt* (1847), 16 Ohio 449, 451. "When creditors desire to sell lands of their debtor, free from incumbrances, justice to him requires that the incumbrancers should be made parties to the proceedings, before the order of the sale." *Ketcham v. Fitch* (1862), 13 Ohio St. 201, 209–210. Thus, the failure to join as a party one who has an interest in the property necessarily results in the purchaser at judicial sale taking title subject to that interest. Simply put, the claim or interest of the omitted party has not been foreclosed or cut off by the proceeding. See generally *Hembree v. Mid–Am. Fed. S. & L. Assn.* (1989), 64 Ohio App.3d 144, 580 N.E.2d 1103. Thus, Mrs. Sipka's retained interest in the property survived the foreclosure sale, as she was not given notice of the foreclosure proceedings.

{¶ 30} The doctrine of caveat emptor is applicable to judicial sales of real property. *Society Natl. Bank v. Wolff* (Apr. 26, 1991), 6th Dist. No. S–90–13, 1991 WL 64865, *4, citing *Mechanics Sav. & Bldg. Loan Assn. v. O'Conner* (1876), 29 Ohio St. 651. The purchaser "buys with his eyes open, at his own risk, and is without [recourse] in case there is a defect in the title of the former owner of the property bought." *Kain v. Weitzel* (1943), 72 Ohio App. 229, 234, 27 O.O. 91, 50 N.E.2d 605, quoting 24 Ohio Jurisprudence, Section 130.

{¶ 31} Based on the foregoing, I would hold that Sipka's interest remains an encumbrance against the subject property until it is properly extinguished.