[Cite as *Griffin v. First Natl. Acceptance Co.*, 2013-Ohio-4302.]

# IN THE COURT OF APPEALS

# ELEVENTH APPELLATE DISTRICT

# TRUMBULL COUNTY, OHIO

DONALD L. GRIFFIN, SR.,                  :        **O P I N I O N**

      Plaintiff-Appellant,            :

      - vs -                          :        **CASE NO. 2012-T-0075**

FIRST NATIONAL ACCEPTANCE             :
COMPANY,
                                        :

      Defendant-Appellee.             :


Civil Appeal from the Trumbull County Court of Common Pleas, Case No. 2009 CV 1864.

Judgment: Reversed and remanded.


*Philip Zuzolo,* and *Patrick B. Duricy,* Zuzolo Law Office, LLC, 700 Youngstown-Warren Road, Niles, OH 44446, and *Gary J. Rosati,* Rosati Law Office, LLC, 860 Boardman-Canfield Road, Suite 102, Boardman, OH 44512 (For Plaintiff-Appellant).

*Christopher John Klym*, 24441 Detroit Road, Suite 200, Westlake, OH 44145 (For Defendant-Appellee).


CYNTHIA WESTCOTT RICE, J.,

{¶1} Appellant, Donald L. Griffin, Sr., appeals the judgment of the Trumbull County Court of Common Pleas granting summary judgment in favor of Appellee, First National Acceptance Company ("FNAC"), and denying Donald's motion for summary judgment. At issue is whether evidence was presented that FNAC breached the

covenant against encumbrances contained in a general warranty deed by which FNAC conveyed the subject property to Donald's predecessor in interest, thus precluding summary judgment. For the reasons that follow, we reverse and remand for proceedings consistent with this opinion.

{¶2} In July 2009, Donald filed a complaint against FNAC. The complaint alleged that Donald is the current owner of a parcel of real property located on West Market Street in Warren, Ohio. The complaint further alleged that FNAC had previously owned the property, and transferred it to Donald's predecessor in interest, his son, David Griffin, in 2003 by general warranty deed. The complaint alleged that David then transferred the property to Donald by quit-claim deed in 2004, and that Donald later discovered the property was encumbered by a mortgage, which pre-dated the 2003 deed transferring the property to David. As David's successor in interest, Donald asserted a claim against FNAC for breach of the covenant against encumbrances contained in the 2003 deed. He also asserted a separate claim for fraud.

{¶3} FNAC filed an answer denying the material allegations of the complaint.

{¶4} In May 2012, FNAC filed a motion for summary judgment. Donald filed a brief in opposition and his own motion for summary judgment, supported by David's affidavit. David stated in his affidavit that in 1992, he entered a land contract with Peter and Anne Perich, as vendors, for the purchase of the West Market Street property. From 1992 to 1997, David made monthly payments under the land contract to the Periches. Then, in 1997, FNAC purchased the property from the Periches along with their interest in the land contract. FNAC thus became the owner of the property, subject

2

to David's land contract. Beginning in 1997, David made his payments under the land contract to FNAC.

{¶5} David stated that in April 2000, he obtained a mortgage loan from FNBA, FNAC's parent company, to buy a home on Heather Lane in Warren. As security for the loan, David granted FNBA a mortgage on the Heather Lane property and on the West Market Street property. As additional security for the loan, David also assigned his interest in the land contract on the West Market Street property to FNBA. The mortgage and assignment were duly recorded. FNAC, which is FNBA's wholly-owned subsidiary, acted as FNBA's mortgage servicer for David's mortgage loan.

{¶6} From 2000 to 2003, David made two separate monthly payments to FNAC, one on the land contract for the West Market Street property (owed to FNAC) and one on the mortgage for the Heather Lane property (owed to FNBA).

{¶7} David stated that in May 2003, he contacted FNAC; told FNAC's representative that his father Donald was interested in buying the West Market Street property; and asked FNAC's representative what it would take to release the property of all liens. FNAC's representative told David that if Donald paid the balance on the land contract, $40,000, FNAC would release the West Market Street property to David "free of all liens."

{¶8} David stated that in June 2003, he paid the land contract on the West Market Street property in full, and, in return, FNAC gave him a general warranty deed to that parcel. In this deed, FNAC covenanted with David that "the premises are free from all encumbrances" and "to forever warrant and defend the title to the said lands against

3

all claims whatever." The deed did not mention the mortgage on the property that David had given to FNBA in 2000. The deed was duly recorded.

{¶9} In January 2004, David transferred the West Market Street property to Donald by quit-claim deed. David ultimately defaulted on his mortgage loan on the Heather Lane property, and, in 2007, FNBA filed a foreclosure action against David and Donald as to both the Heather Lane and West Market Street properties. David stated in his affidavit that FNAC did not defend the title of Donald, as David's successor in interest, to the West Market Street property. Instead, FNAC assisted FNBA in its efforts to foreclose the mortgage. David ultimately consented to the foreclosure of the Heather Lane property, which was sold at sheriff's sale. FNBA voluntarily dismissed without prejudice the foreclosure action against the West Market Street property pending the outcome of this action.

{¶10} In August 2012, the trial court entered summary judgment in favor of FNAC and denied Donald's motion for summary judgment. The court noted that the facts in this case "are not easily resolved" and that this was a "novel" case.

{¶11} Donald appeals the court's judgment, asserting two assignments of error. For his first assigned error, he alleges:

{¶12} "The trial court erred in granting summary judgment to defendant FNAC and denying summary judgment for the plaintiff on plaintiff Griffin's complaint to enforce the general warranty deed contract entered into by defendant FNAC."

{¶13} Donald argues that the 2003 general warranty deed for the West Market Street property from FNAC to David, his predecessor in interest, contained a covenant that the property was free of all encumbrances. Donald contends that, because the

4

mortgage David gave to FNBA in 2000 was still an encumbrance on the property, FNAC breached the covenant against encumbrances when it gave David the deed in 2003.

{¶14} In contrast, FNAC argues that, following execution of the land contract in 1992, David received an equitable interest in the West Market Street property, and FNAC retained the legal title until the land contract was paid in full. FNAC contends that David's mortgage on the property in favor of FNBA in 2000 created a lien against his equitable interest and thus constituted an equitable mortgage. FNAC argues that, because the mortgage only attached to David's equitable interest, not FNAC's legal title, it was not an encumbrance. Thus, FNAC argues it did not breach the covenant against encumbrances.

{¶15} This court has held that summary judgment is proper when: (1) there is no genuine issue of material fact; (2) the moving party is entitled to judgment as a matter of law; and (3) reasonable minds can come to but one conclusion, and that conclusion is adverse to the nonmoving party, that party being entitled to have the evidence construed most strongly in his favor. Civ.R. 56(C); *Frano v. Red Robin International, Inc.*, 181 Ohio App.3d 13, 2009-Ohio-685, ¶12 (11th Dist.), citing *Leibreich v. A.J. Refrigeration, Inc.*, 67 Ohio St.3d 266, 268 (1993).

{¶16} The party seeking summary judgment on the ground that the nonmoving party cannot prove his case bears the initial burden of informing the trial court of the basis for the motion and of identifying those portions of the record that demonstrate the absence of a genuine issue of material fact on the essential elements of the nonmoving party's claim. *Dresher v. Burt*, 75 Ohio St.3d 280, 292 (1996).

5

{¶17} The moving party must point to some evidence of the type listed in Civ.R. 56(C) that affirmatively demonstrates that the nonmoving party has no evidence to support his claim. *Dresher, supra*, at 293.

{¶18} If this initial burden is not met, the motion for summary judgment must be denied. *Id*. However, if the moving party has satisfied his initial burden, the nonmoving party then has a reciprocal burden, as outlined in Civ.R. 56(E), to set forth specific facts showing that there is a genuine issue for trial and, if the nonmovant does not so respond, summary judgment, if appropriate, shall be entered against him. *Id*.

{¶19} Since a trial court's decision ruling on a motion for summary judgment involves only questions of law, we conduct a de novo review of the trial court's judgment. *DiSanto v. Safeco Ins. of Am.*, 168 Ohio App.3d 649, 2006-Ohio-4940, ¶41 (11th Dist.).

{¶20} As a preliminary matter, we note that FNAC did not satisfy its duty under Civ.R. 56 to file affidavits, depositions, or other evidentiary materials in compliance with Civ.R. 56(C). That rule requires that the affidavits presented on summary judgment be originals. *Cementech, Inc. v. Fairlawn*, 9th Dist. Summit No. 21282, 2003-Ohio-2632, ¶12; *French v. New Paris*, 12th Dist. Preble No. CA2010-05-008, 2011-Ohio-1309, ¶54. However, the affidavits filed by FNAC in support of its summary-judgment motion are not originals, as required by Civ.R. 56(C). To the contrary, they are merely copies of affidavits that were apparently prepared and used by FNBA in support of a summary-judgment motion filed in its 2007 foreclosure action. Further, FNAC's affidavits do not address the issues raised in the complaint and do not demonstrate the absence of any factual issues. For this reason alone, FNAC is not entitled to summary judgment.

6

{¶21} However, even if FNAC had presented proper evidentiary materials in support of its motion for summary judgment, FNAC would not have been entitled to summary judgment. Pursuant to R.C. 5302.05, a general warranty deed, when properly executed

{¶22} has the force and effect of a deed in fee simple to the grantee, the grantee's heirs, assigns, and successors * * * with covenants on the part of the grantor with the grantee, the grantee's heirs, assigns, and successors, that, at the time of the delivery of that deed the grantor was lawfully seized in fee simple of the granted premises, *that the granted premises were free from all encumbrances*, * * * and that the grantor does warrant and will defend the same to the grantee and the grantee's heirs, assigns, and successors, forever, against the lawful claims and demands of all persons." (Emphasis added.)

{¶23} A covenant against encumbrances in a general warranty deed is breached "as soon as [it is] made if an encumbrance in fact exists." *Stockman v. Yanesh*, 68 Ohio St.2d 63 (1981), syllabus.

{¶24} Ohio law provides that, under a warranty deed, the grantee will only be barred from asserting a breach of the warranty if an encumbrance was specifically excepted in the deed. *Long v. Moler*, 5 Ohio St. 271, 274 (1855). Further, known encumbrances are not excepted from the operation of the covenant. *Id.*

{¶25} This court in *Liddy v. Studio*, 11th Dist. Geauga No. 96-G-2009, 1997 Ohio App. LEXIS 1465, *7 (Apr. 11, 1997), adopted the definition of "encumbrance" in Black's

7

Law Dictionary (6th Ed.1991) 527, as follows: "'[a]ny right to, or interest in, land which may subsist in another to the diminution of its value, but consistent with the passing of the fee by conveyance. * * * A claim, lien, charge, or liability attached to and binding real property; e.g. a *mortgage * * *. If the liability relates to a particular asset, the asset is encumbered.*'" (Emphasis added.)

{¶26} Further, in *Voytecek v. Peoples Sav. Bank Co.*, 65 Ohio App. 118 (7th Dist.1940), the Seventh District defined an "encumbrance" as "anything that impairs the use or transfer of real estate; anything which constitutes a *cloud on the title * * *." Id.* at 120. (Emphasis added.)

{¶27} Moreover, in *Thornton v. Guckiean & Co.*, 77 Ohio App.3d 794 (12th Dist.1991), *a case relied on by both parties*, the Twelfth District held that after the execution of the land contract in that case, the vendee "received an equitable interest in the contract as personalty *as well as an equitable interest in the land.*" (Emphasis added.) *Id.* at 798. Thereafter, before the land contract was paid off, the vendee obtained a loan of money and granted his creditor an assignment of his interest in the land contract and a mortgage on the subject property. The court held that the vendee's assignment of the land contract as security for his debt gave his creditor an equitable interest, which "*create[d] a cloud on the title to the property*." (Emphasis added.) *Id.* at 799. In addition, the appellate court held that the equitable mortgage gave the creditor a right to foreclose on the vendee's equitable interest in the land if he was in default. *Id.*

{¶28} According to the well-established law of this state, the subject mortgage satisfied the definition of "encumbrance." First, an encumbrance is a cloud on title. *Voytecek, supra.* Further, a land contract gives the vendee an equitable interest in the

8

land. *Thornton, supra.* Moreover, when a vendee under an unpaid land contract obtains a loan of money from a creditor and then grants to the creditor a mortgage on the land, the debtor gives the creditor an equitable interest, which "creates a cloud on the title to the property." *Id.* Thus, the fact that David's mortgage on the property was equitable in nature did not alter the fact that it was a mortgage; that it was recorded; that it was a cloud on the title to the property; and that it was, therefore, an encumbrance.

{¶29} However, David stated in his affidavit that the representative from FNAC, FNBA's mortgage servicer and wholly-owned subsidiary, told him in May 2003 that if Donald paid the balance on the land contract, i.e., $40,000, FNAC would release the West Market Street property "free of all liens." In addition, the 2003 general warranty deed to the West Market Street property from FNAC to David included a covenant that the property was "free from all encumbrances, unless otherwise noted above." The deed did not contain an exception for any encumbrances. Yet, the mortgage David gave to FNBA in 2000 remained an encumbrance on the property.

{¶30} Donald argues persuasively that FNAC ignores the statutory difference between a general warranty deed and a limited warranty deed. Pursuant to R.C. 5302.05, a general warranty deed, such as the one FNAC gave David, warrants that the property is free from *all* encumbrances. In contrast, under R.C. 5302.07, a limited warranty deed warrants that the property is free only "from all encumbrances made by the grantor." FNAC argues that, because the mortgage at issue created a lien against David's equitable interest, not FNAC's legal title, it was not an encumbrance. FNAC thus argues that a lien is not an encumbrance unless the encumbrance is against the grantor's legal title, i.e., that the encumbrance was made by the grantor. However,

pursuant to R.C. 5302.05, a general warranty deed warrants the title against *all encumbrances*, not only those that are made by the grantor.

{¶31} Since evidence was presented that the West Market Street property was encumbered by a mortgage in favor of FNBA when FNAC gave David a general warranty deed to the property, a genuine issue exists as to whether FNAC breached the covenant against encumbrances contained in the deed.

{¶32} Donald's first assignment of error is sustained.

{¶33} For his second assignment of error, Donald contends:

{¶34} "The trial court erred by dismissing the plaintiff's misrepresentation claim by finding that there was no admissible evidence that indicated an intent by the appellee/defendant to effectuate a release of the April 2000 mortgage on the West Market Street property."

{¶35} In its motion for summary judgment, FNAC addressed only Donald's claim for breach of the covenant against encumbrances contained in the warranty deed. All of FNAC's argument was directed against that claim. FNAC did not present any argument or evidentiary materials concerning Donald's claim for fraud. Thus, FNAC did not satisfy its initial burden of informing the trial court of the basis for the summary-judgment motion and pointing to Civ.R. 56(C) evidence that demonstrated Donald had no evidence to support his claim for fraud. *Dresher, supra*, at 293. As a result, FNAC was not entitled to summary judgment as to this claim, and the trial court erred in granting summary judgment in its favor.

{¶36} In any event, Donald presented evidence via David's affidavit that FNAC's representative told him if the mortgage on the West Market Street property was paid off,

10

FNAC would release the property "free of all liens." However, when FNAC gave the deed to the property to David, the property was encumbered by the pre-existing mortgage from David to FNBA. Thus, even if FNAC had met its initial burden on summary judgment, a genuine issue of material fact exists with respect to Donald's fraud claim.

{¶37} Donald's second assignment of error is sustained.

{¶38} For the reasons stated in the opinion of this court, it is the judgment and order of this court that the judgment of the Trumbull County Court of Common Pleas is reversed, and this matter is remanded to the trial court for further proceedings consistent with this opinion.

THOMAS R. WRIGHT, J., concurs,

DIANE V. GRENDELL, J., dissents with a Dissenting Opinion.

_____

DIANE V. GRENDELL, J., dissents with a Dissenting Opinion.

{¶39} I dissent from the majority's decision to reverse the judgment of the trial court, based on the conclusion that there is a genuine issue of fact as to whether First National Acceptance Corporation (FNAC) breached the covenant against encumbrances contained in a general warranty deed to David Griffin. The majority's holding would lead to an unjust and unfair result, allowing David and his father, Donald, as the new owner, to avoid the mortgage David himself took out on the property. Since David's mortgage was equitable, did not bind to FNAC's legal title to the property, and was not an encumbrance, FNAC was not required to disclose it in the general warranty

11

deed.  The trial court's grant of summary judgment was proper.

{¶40}  In the present case, David had a land installment contract with FNAC on his West Market Street property.  While still making payments to FNAC under that contract, he mortgaged his interest through First National Bank of America (FNBA).  After payment for the property under the land installment contract was complete, FNAC conveyed the property to David with a general warranty deed.  David subsequently gave the property to Donald through a quit claim deed.

{¶41}  While a general warranty deed typically requires the party conveying real estate to grant the land free of any encumbrances, under the unique circumstances of this case, FNAC was not required to state the existence of the mortgage or to protect Donald against any lawsuits related to the FNBA mortgage on the West Market Street property.

{¶42}  In cases involving land installment contracts, such as the present case, before final payment occurs, the purchaser has an equitable interest in the property, while the legal title remains with the seller.  *Thornton v. Guckiean & Co., Inc.*, 77 Ohio App.3d 794, 798, 603 N.E.2d 1066 (12th Dist.1991).  The purchaser can mortgage his equitable interest in the property prior to obtaining his full interest.  *See Basil v. Vincello*, 50 Ohio St.3d 185, 189, 553 N.E.2d 602 (1990) (a purchaser of land under a land installment contract has an equitable interest in the land prior to the completion of the terms of the contract); *Alemania Loan & Bldg. Co. No. 2 v. Frantzreb*, 56 Ohio St. 493, 499, 47 N.E. 497 (1897).

{¶43}  A mortgage by the party contracting to purchase land under an installment contract that occurs prior to the completion of the contract, then, is an equitable

12

mortgage and creates a lien upon the mortgagor's equitable interest only. *Alemania Loan* at 499 ("[s]ince the mortgagor has never held the legal title, the mortgages operated only to create a lien upon his equitable interest"); *Thornton* at 799 ("[w]here an individual who has contracted to purchase real property mortgages the property before actually receiving legal title, the mortgage does not create a legal lien but operates only to create a lien upon the mortgagor's equitable interest"). A mortgagee may foreclose upon only the equitable interest of the mortgagor. *Id.*

**{¶44}** In the present matter, David took out the FNBA mortgage prior to completing the terms of the land installment contract, and prior to paying off his debt to FNAC for the West Market Street property. This mortgage with FNBA was an equitable mortgage and applied only to the interest he held at that time. Under the definition of an encumbrance, the lien or liability, in this case, the equitable mortgage, was not "attached to and binding" the real estate granted in the general warranty deed by FNAC, since that mortgage was tied only to the equitable interest held by David. *See Dietl v. Sipka*, 185 Ohio App.3d 218, 2009-Ohio-6225, 923 N.E.2d 692, ¶ 14 (11th Dist.) (an encumbrance includes "[a] claim, lien, charge, or liability *attached to and binding* real property") (citation omitted) (emphasis sic).

**{¶45}** The legal title held by FNAC had not been mortgaged or otherwise encumbered, such that it would be necessary to make a statement of encumbrance in a general warranty deed. While David received full legal title and interest in the property after the general warranty deed was given to him, he did not have such title or interest in the property prior to the transfer, and it cannot be said that his encumbrance was attached to FNAC's interest at the time of transfer.

{¶46} The majority's opinion emphasizes the difference between general and limited warranty deeds. However, this distinction is not relevant, since the real issue is whether an encumbrance existed, as considered above, not whether FNAC was required to grant the premises free of all encumbrances.

{¶47} Furthermore, it is inequitable for Donald, as the present owner of the property, to be entitled to defense of his title by FNAC. This is not a situation where David, who took out the mortgage, was merely aware of the existence of a mortgage at the time he received the general warranty deed. *See Long v. Moler*, 5 Ohio St. 271, 274 (1855) (known encumbrances are not presumed to be excluded from a general warranty deed). Instead, he took out the mortgage on his own property and then conveyed that property to his father. To allow Donald to prevail in this matter would have the effect of allowing his son, David, to avoid the responsibility of the mortgage that he took out on his own equitable interest of his property. There is also no evidence that FNAC intended to take action to extinguish the mortgage. Although a general warranty deed was given, there are no allegations in the affidavit that FNAC specifically stated it would remove David's obligation to pay off the FNBA mortgage.

{¶48} The purpose of a warranty deed is to protect the grantee and his heirs and assigns, as explained in R.C. 5302.05, from claims that may arise in the future, essentially preventing any surprises in the form of encumbrances. In this case, the person to be protected by the warranty deed was fully aware of the equitable mortgage on the property. The argument presented by Donald is essentially that both he and David should be protected against an encumbrance that David himself created, a result which should not be allowed and defies equity.

**{¶49}** Regarding the second assignment of error, the misrepresentation claim relates to alleged promises made by FNAC that there would be no encumbrances on the conveyed property. Since FNAC properly claimed that there were no encumbrances, as found above, it does not follow that it was fraud to state that fact. There is no basis for proceeding on this claim.

**{¶50}** For the foregoing reasons, I dissent from the majority's decision, which would result in an inequitable and improper result. The trial court's decision should be affirmed.